**Thomas Otis PALMER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–05–00514–CR.**

Court of Appeals of Texas, Houston (14th Dist.).

May 9, 2006.

Discretionary Review Refused Feb. 7, 2007.

John J. Davis, for appellant.

Terri Tipton Holder, for appellee.

Panel consists of Chief Justice HEDGES and Justices YATES and GUZMAN.

## OPINION

LESLIE BROCK YATES, Justice.

A jury convicted appellant Thomas Otis Palmer of aggravated sexual assault of a child and indecency with a child by exposure and assessed punishment, respectively, at life imprisonment and a $10,000 fine and ten years' imprisonment and a $10,000 fine. In four issues, appellant complains (1) the jury charge contained error, (2) the evidence is legally and factually insufficient to establish penetration, and (3) the evidence is factually insufficient to estab-

lish that the incident giving rise to both indictments occurred. Because we find error exists in the jury charge that caused appellant egregious harm, we reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant lived with his girlfriend, Jill, and her three minor daughters L.G., fourteen, complainant L.M., eight, and C.M., six.[1] On April 24, 2003, Jill moved with her daughters into the Brazoria County Women's Shelter. Four days later, Ronald Weidman, a Child Protective Services investigator, interviewed L.M. Weidman asked L.M. if anyone had ever touched her inappropriately, and at that time, L.M. answered no. However, three days later, L.M. told Jill that one night while Jill was working, appellant exposed his penis to her and C.M. while they were on Jill's bed and "stuck his finger inside of [L.M.]." He then asked if anyone had done that to her before and told her to smell his finger. L.M. later told an interviewer at the Children's Assessment Center about the sexual assault. The State charged appellant with aggravated sexual assault and indecency with a child.

At trial, the State called Jill, who testified about L.M.'s outcry statement. L.M. then testified about the sexual assault. She said she did not remember if appellant touched her on the inside or outside of her vagina but that it hurt on the inside. She also said she initially did not tell anyone about the sexual assault because she was afraid of appellant. Some of L.M.'s testimony about the assault differed from Jill's account of her outcry statement.[2] During cross-examination, appellant questioned her about these differences, and L.M. replied, "She probably didn't hear me right." Also during cross-examination, appellant asked L.M. about a similar sexual assault accusation she made about three years previously against her mother's friend, Melissa Bridges. L.M. testified that she was lying on Jill's bed when Bridges reached under her clothes and inserted her finger in L.M.'s vagina. As with appellant, an uninvolved third person was in the room when Bridges sexually assaulted L.M., and Bridges only assaulted her once.

The State also called pediatrician Dr. Sheela Lahoti, who testified that L.M. had a normal physical exam with "no evidence of penetrating trauma." However, Dr. Lahoti also said that because the abuse allegedly occurred seven months prior to L.M.'s examination, it was "highly unlikely" that any injuries would still be visible. Margaux LaFortune, a youth and family therapist who treated L.M., testified that L.M. exhibited some symptoms of post-traumatic stress disorder, suggesting she had experienced a traumatic event. Upon questioning by the State, LaFortune further testified that children who are coached to lie about sexual abuse are unlikely to be able to consistently "fake" emotional reactions to the alleged abuse.

Appellant called his step-mother, Jenny Palmer. Palmer testified that on April 24, 2003, she asked L.M. if appellant had ever touched her because Jill was "concerned about [appellant's] actions." L.M. told Palmer, "[N]o, he knows not to touch me because I would tell because I tell everything, don't I, mommy?" Palmer said she asked L.M. the same question on three separate occasions, and L.M. always an-

---

1. The girls' ages refer to the time of trial, not the offense.

2. L.M. testified that C.M. was not in the room when appellant touched her vagina but that appellant called her in afterward and then exposed himself to the girls. According to Jill, L.M. told her appellant called C.M. in the bedroom, exposed himself, and then touched her vagina.

swered the same. At trial, L.M. testified that she did not remember Palmer asking her if appellant touched her inappropriately. She also said she did not remember meeting with Weidman or that he asked her if anyone had inappropriately touched her.

### ANALYSIS

■■■ In his first issue, appellant claims the jury charge contains error. In assessing such a claim, we first determine whether error exists in the jury charge. *Arline v. State,* 721 S.W.2d 348, 351 (Tex. Crim.App.1986). If error is found, we next determine whether it was so harmful as to require reversal of the conviction. *Id.* The degree of harm required for reversal depends on whether the error was preserved. *Id.* Where, as here, the appellant failed to preserve error by objecting at trial, he must show on appeal that the error was "so egregious and created such harm that he 'has not had a fair and impartial trial.'" *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *see also Hutch v. State,* 922 S.W.2d 166, 174 (Tex.Crim.App. 1996) (finding egregious harm where jury charge stated opposite of the law). In determining harm, the reviewing court may consider (1) the jury charge itself, (2) the state of the evidence, including contested issues and the weight of the probative evidence, (3) arguments of counsel, and (4) any other relevant information in the record. *Hutch,* 922 S.W.2d at 171.

The jury charge included the following instructions:

There is also testimony before you in this case concerning a previous allegation of sexual assault made by [L.M.] *You cannot consider such evidence unless you first find beyond a reasonable doubt that the allegation made by [L.M.] was false,* and even then, you may only consider the same in aiding you, if it does aid you, in judging the credibility of [L.M.] and for no other purpose.

(emphasis added).

■■■ A defendant seeking to impeach a witness with evidence of a previous false accusation against a third party must, as a threshold evidentiary matter, produce evidence showing the prior accusation is actually false. *See Lopez v. State,* 18 S.W.3d 220, 225–26 (Tex.Crim.App.2000) (approving trial court's exclusion of complainant's previous accusation of physical abuse against third party when it was "never shown to be false"); *Lape v. State,* 893 S.W.2d 949, 955 (Tex.App.-Houston [14th Dist.] 1994, pet. ref'd) (upholding exclusion of prior accusations of sexual assault against third parties when the appellant produced no evidence of falsity); *Hughes v. State,* 850 S.W.2d 260, 262–63 (Tex.App.-Fort Worth 1993, pet. ref'd) (same). The trial court evidently found that appellant met this burden when it admitted the evidence.[3] After the evidence was admitted, it was the exclusive province of the jury to determine L.M.'s credibility and the weight of her testimony and to reconcile conflicts in the evidence. *See Wesbrook v. State,* 29 S.W.3d 103, 111 (Tex.Crim.App. 2000). However, the jury charge erroneously required the jury to find L.M.'s prior accusation false *beyond a reasonable doubt* before using it to weigh her credibility. Moreover, no limiting instruction was needed because it was apparent that appellant offered the evidence for impeachment only. *See Cantrell v. State,* 731 S.W.2d 84, 95 (Tex.Crim.App.1987) ("It is well estab-

---

**3.** When the trial judge ruled that appellant could question L.M. about her prior accusation, he commented that "there is some evidence of falsity on that." On appeal, neither side argues that the evidence was improperly admitted; thus, we do not consider whether the trial court abused its discretion in admitting it.

lished that where testimony in question could only be used by the jury for impeachment, no limiting charge to the jury is required."); *Jones v. State,* 810 S.W.2d 824, 828 (Tex.App.-Houston [14th Dist.] 1991, no pet.) ("[W]hen a *defendant* impeaches the *State's witness,* an instruction limiting the jury's consideration of the impeaching testimony is unnecessary."). Thus, error exists in the jury charge.

Having found error, we next consider whether it constitutes egregious harm. *See Arline,* 721 S.W.2d at 351. Appellant claims the jury charge error egregiously harmed him because "the very basis of this case was [L.M.]'s credibility." The prosecutor, during closing arguments, conceded that L.M.'s credibility was crucial, stating, "Obviously, in order to turn a verdict to guilty [sic] in this case you have to believe [L.M.]'s testimony. If you don't believe her testimony, then there is no evidence of the defendant's guilt. . . ." After this remark, the prosecutor repeated the jury charge's erroneous "beyond a reasonable doubt" language five times and explained that, unless the jury found beyond a reasonable doubt that the prior accusation was false, the evidence could not be considered "for any purpose, it's as if it never came up in the trial."

█ We find that, under these particular facts, the jury charge error caused appellant egregious harm. In its jury charge, the trial court subjected the evidence of L.M.'s prior accusation to an unnecessary and extremely high burden, thus effectively depriving appellant of impeachment evidence admitted during trial. The prosecutor compounded the jury charge error by repeatedly stressing the erroneous language throughout closing arguments. *See Ngo v. State,* 175 S.W.3d 738, 745–48 (Tex.Crim.App.2005) (finding egregious harm when prosecutor and trial court repeated erroneous instruction permitting non-unanimous verdict). Additionally, the state of the evidence shows that L.M.'s credibility was a key issue in the case, which the State acknowledged. The State produced no independent evidence of the sexual assault, such as physical evidence or eyewitness testimony. Rather, the testimony by most of the State's witnesses relied on L.M.'s claim. Further, L.M. claimed she delayed her outcry because she was afraid of appellant and did not remember denying the abuse to Palmer and Weidman. There were also discrepancies between Jill's and L.M.'s testimony describing the sexual assault. Resolution of these matters in favor of conviction required the jury to believe that L.M. was telling the truth. Under these circumstances, appellant's impeachment evidence was vital to his defense. Because the jury charge error significantly undermined the jury's ability to consider admitted evidence vital to appellant's defense, it denied him a fair and impartial trial and caused him egregious harm. *See Almanza,* 686 S.W.2d at 171; *see also Ngo,* 175 S.W.3d at 750 ("Errors that result in egregious harm are those that . . . 'vitally affect a defensive theory.'" (quoting *Hutch,* 922 S.W.2d at 171)). Thus, we sustain appellant's first issue. Accordingly, we reverse appellant's conviction and remand for a new trial.

█ In appellant's second issue, he complains that the evidence is legally insufficient to support his conviction for aggravated sexual assault of a child. Specifically, he claims the evidence is insufficient to establish that he penetrated L.M.'s vagina with his finger. We address this claim even though we sustain appellant's first issue. *See Rankin v. State,* 46 S.W.3d 899, 901 (Tex.Crim.App.2001) (noting that "'[a]n appellate court must always address challenges to the [legal] sufficiency of the evidence'" (quoting *McFarland v. State,*

930 S.W.2d 99, 100 (Tex.Crim.App.1996) (alterations in original))).[4] In conducting a legal-sufficiency claim attacking a jury's finding of guilt, we view the evidence in the light most favorable to the verdict. *Wesbrook*, 29 S.W.3d at 111. We do not ask whether we believe the evidence at trial established guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Rather, we determine only whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex.Crim.App.2000). In our review, we accord great deference " 'to the responsibility of the trier of fact [fairly to] resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996) (quoting *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781). We presume that any conflicting inferences from the evidence were resolved by the jury in favor of the prosecution, and we defer to that resolution. *Id.* at 133 n. 13.

We find the evidence legally sufficient to establish that appellant penetrated L.M. Under Texas case law, the slightest penetration of the female sexual organ is sufficient to uphold a conviction. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex.Crim.App.1992) ("[P]ushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact."); *Murphy v. State*, 4 S.W.3d 926, 929 (Tex. App.-Waco 1999, pet. ref'd) (finding penetration where child testified the defendant put his fingers between her labia and rubbed on the vaginal opening). Here, the jury rationally could have inferred that appellant penetrated L.M. based on her testimony that it hurt inside when he touched her, he told her to smell his finger afterward, and he asked if anyone had done that before. *See Villalon v. State*, 791 S.W.2d 130, 133–34 (Tex.Crim.App. 1990) (noting that child victims need not testify to penetration, which the State may prove through circumstantial evidence). Viewing this evidence in a light most favorable to the verdict, we conclude that a rational jury could have found the elements of aggravated sexual assault of a child beyond a reasonable doubt. We overrule appellant's second issue.

Because we find that appellant was egregiously harmed by an erroneous jury instruction, we reverse the trial court's judgment and remand for a new trial.

---

**4.** We need not consider appellant's third or fourth issues raising factual sufficiency challenges because, unlike his legal sufficiency challenge, neither issue would entitle appellant to an acquittal instead of remand; thus, their resolution is not "necessary to final disposition of the appeal." Tex.R.App. P. 47.1.