

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

NO.AP-75,352

CHRISTOPHER ANTHONY YOUNG, Appellant

v.

THE STATE OF TEXAS

ON DIRECT APPEAL
FROM CAUSE NO. 2005-CR-1183 IN THE 187TH DISTRICT COURT
FROM BEXAR COUNTY

**COCHRAN, J., filed a concurring opinion.**

## **OPINION**

I join in the Court's resolution of appellant's fifteenth point of error concerning the

punishment charge. Although the trial judge accidentally omitted a portion of the statutory

language related to the mitigation issue, this record does not support a finding that appellant

"has suffered actual, rather than merely theoretical, harm from jury instruction error."[1]

---

[1] *Warner v. State*, 245 S.W.3d 458, 464 (Tex. Crim. App. 2008) (quoting *Ngo v. State*, 175 S.W.3d 738, 750 (Tex. Crim. App. 2005)).

Furthermore, because appellant explicitly stated that he had "no objection" to the jury charge, he cannot obtain a reversal of his conviction unless the trial record shows that he suffered "egregious" harm because of that missing instruction. Thus, we must affirm unless the record shows that appellant was denied the right to have each juror consider different mitigating evidence in reaching a unanimous verdict that no mitigating circumstance or combination of circumstances called for a life sentence rather than one of death.[2]

Although appellant raises the possibility of theoretical harm, the "possibility" or "conceivability" of harm is not the "actuality" of egregious harm.[3] This is a high and difficult standard which must be borne out by the trial record.[4] The present record demonstrates that it is most unlikely that these jurors were misled or confused by the trial court's failure to include the instruction that they "need not agree on what particular evidence supports an affirmative finding" on the mitigation issue.

When deciding that a defendant has suffered "egregious" harm because of a faulty or missing jury instruction, we have generally found such harm in only two situations:

1)      The error is so plain and so obviously detrimental to the defendant and his right to a fair trial, that an objectively reasonable person would agree that such an error, by itself, deprives the defendant of a fair trial;[5] or

---

[2] *See Ngo v. State*, 175 S.W.3d 738, 752 (Tex. Crim. App. 2005).

[3] *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).

[4] *See Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002).

[5] *See Almanza*, 686 S.W.2d at 171 (discussing history of "blatant error fundamental in nature"). We have very rarely found instructional errors of that enormity. For example,

2)    The error was compounded by other mistakes or missteps by the trial judge, prosecutor, or defense that magnified the instructional error.[6]

Neither the State nor the defendant carries a burden of persuasion on the question of harm.[7] As noted by Professors Dix and Dawson, "an appellate court finding fundamental error in the charge under *Almanza* should affirm unless it can say–possibly "with

---

"[i]f there is a total omission of the instruction on reasonable doubt, such error defies meaningful analysis by harmless-error standards. However, if the jury is given a partial or substantially correct charge on reasonable doubt, then any error therein is subject to" a harm analysis, which would occur under the *Almanza* standards. *State v. Toney*, 979 S.W.2d 642, 644-45 (Tex. Crim. App. 1998); *compare Harris v. State*, 522 S.W.2d 199, 202 (Tex. Crim. App. 1975) (fundamental error when jury charge had no application paragraph at all; "Fundamental error is presented where error in the charge goes to the very basis of the case so that the charge fails to state and apply the law under which the accused is prosecuted."). Most "obvious" or even "fundamental" errors are found not to cause "egregious harm." *See, e.g., DeBlanc v. State*, 799 S.W.2d 701, 710-11 (Tex. Crim. App. 1990) (failure to instruct jury that witness was an accomplice as a matter of law did not cause "egregious" harm because only an "unreasonable jury" would conclude that witness was not an accomplice). As the Supreme Court has recently reiterated, even a jury instruction "'that omits an element of the offense does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.'" *Washington v. Recuenco*, 548 U.S. 212, 219 (2006) (quoting *Neder v. United States*, 527 U.S. 1, 9 (1999)).

[6] *See, e.g., Ngo*, 175 S.W.3d at 750-52 (omission of unanimity instruction caused egregious harm when prosecutor and judge both misstated law concerning unanimity on multiple occasions during trial); *see also id*. 175 S.W.3d at 753 (Womack, J., concurring) ("The charge in this case also was surrounded by errors, as the court's opinion points out: the prosecutor's incorrect statement in voir dire that the law does not require a unanimous verdict, the trial court's making a statement to the same effect in voir dire, and the prosecutor's reiteration of the wrong law in argument"; thus, "by failing to cure the cumulative effect of a series of missteps, the courts' charges contained the ultimate step that make 'it appear[ ] from the record that the defendant has not had a fair an impartial trial' within the meaning of Article 36.19.").

[7] *Warner*, 245 S.W.3d at 464.

confidence"–that the error resulted in harm."[8]  And not just harm, but "egregious" harm

when, as in this case, the appellant did not object to the jury charge.

In analyzing the record for "egregious harm," we consider the following four factors:

(1)     the charge itself;

(2)     the state of the evidence including contested issues and the weight of the probative evidence;

(3)     arguments of counsel; and

(4)     any other relevant information revealed by the record of the trial as a whole.[9]

1.     *The Jury Charge.*

First, we look at the charge itself.  In this case, the punishment charge omitted one

sentence of a state law instruction to the jury in a capital sentencing hearing.[10]  That omitted

sentence was: "The jury need not agree on what particular evidence supports an affirmative

finding on the mitigation issue."[11]  Appellant relies upon *Mills v. Maryland*,[12] in which the

---

[8] 43A GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE, § 42.241 at 365 (2d ed. 2001).

[9] *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006).

[10] See TEX. CODE CRIM. PROC. art. 37.071, §2(f) ("The court shall charge the jury that in answering the [mitigation] issue submitted under subsection (e) of this article, the jury: . . . (3) need not agree on what particular evidence supports an affirmative finding on the issue;").

[11] *Id.*

[12] 486 U.S. 367 (1988).

Supreme Court overturned a death sentence because of jury instructions that created a substantial probability that jurors thought they were precluded from considering any mitigating evidence unless they unanimously agreed on the existence of one or more particular mitigating circumstances. In *Mills*, the jury was instructed to first unanimously determine whether certain specific aggravating and mitigating factors existed, marking "yes" or "no" beside each listed factor, and then to weigh those specific factors in determining whether to assess death. The Supreme Court found a substantial probability that jurors would believe that they were prohibited from considering any mitigating factors unless all twelve jurors agreed on the existence on the same specific factors. That erroneous belief would result in a virtually automatic death sentence even where the jurors may otherwise have concluded that death was inappropriate.[13]

The situation is very different here. These instructions did not tell the jurors that they must agree on any specific mitigating facts. Indeed, before *Mills* was decided, the statutorily mandated jury instructions under article 37.071 did not include any instruction concerning agreement or disagreement about specific mitigating circumstances.[14] Nonetheless, this Court held that jury instructions given under former article 37.071–without any instructions

---

[13] *Id*. at 373-74.

[14] *See Hughes v. State*, 897 S.W.2d 285, 300-01 & n.21 (Tex. Crim. App. 1993) (noting that the interpretive commentary to the legislative changes to art. 37.071(2)(d)(3), (2)(f)(3), were made in 1991 to "foreclose the potential for challenges" based on *Mills*, but stating that the statute prior to the revision did not violate *Mills*).

that the jury need not agree on specific mitigation facts–did not violate *Mills*.[15] The addition of this statutory instruction was a prophylactic measure to avert any potential appellate challenges, not to repair an otherwise unconstitutional or ambiguous special issue.[16] If it was not error to omit such an instruction before the legislative amendment, the omission of such an instruction after the legislative amendment did not suddenly cause "egregious harm." It may be statutory error, but it is not necessarily harmful.

In this case, for example, the jurors were instructed that, before they could answer "no" to the mitigation question, each and every one of them had to agree that there were no mitigating facts or circumstances that called for a sentence of life imprisonment rather than death. If even one juror believed that there was some mitigating fact, *any* mitigating fact, that called for a life sentence, that juror could not join a verdict in which the jury "unanimously found" that there was no mitigating circumstance.[17] Appellant's jury did return a unanimous verdict that there was no such mitigating circumstance. Therefore, it would be illogical to speculate that perhaps one or more of those jurors did find a mitigating circumstance but was so confused about the unanimity requirement that he thought that unless every juror agreed upon the same mitigating fact, his vote did not count. So he

---

[15] *Rousseau v. State,* 855 S.W.2d 666, 687 n.26 (Tex. Crim. App. 1993) (rejecting defendant's claim that former art. 37.071 misled jurors by creating impression that jury must be unanimous in finding the existence of specific mitigating circumstances).

[16] *Hughes*, 897 S.W.2d at 300-01.

[17] T EX. CODE CRIM. PROC. art. 37.071, § 3(e)(1), (f)(2).

changed his vote. Such reasoning assumes that jurors would violate their oaths. We must, however, "presume[ ] that jurors, conscious of the gravity of their tasks, attend closely the particular language of the trial court's instructions in criminal cases and strive to understand, make sense of, and follow the instructions given them."[18]

Other states have, like Texas, held that the omission of a "nonunanimity" instruction does not confuse or mislead the jury in a death penalty trial.[19] For example, in *People v.*

---

[18] *Francis v. Franklin*, 471 U.S. 307, 324 n. 9 (1985); *see also Parker v. Randolph,* 442 U.S. 62, 75 n. 7 (1979) ("The 'rule'–indeed, the premise upon which the system of jury trials function under the American judicial system–is that juries can be trusted to follow the trial court's instructions.").

[19] *See, e.g., Davis v. State*, 684 So.2d 643, 664-65 (Miss. 1996) (rejecting defendant's claim that, because the jury was never instructed that mitigating circumstances were to be found individually and not unanimously, reasonable jurors might have misunderstood the instructions and thought that they were required to be unanimous about any specific mitigating circumstance); *Stiles v. State*, 829 P.2d 984, 997 (Okla. Crim. App. 1992) (rejecting defendant's claim that trial court erred in failing to inform jury that unanimous agreement upon the mitigating circumstances was not required before the jury could consider them; "Because the instructions and verdict forms in the present case did not require unanimity regarding mitigating circumstances, nor could they reasonably have been interpreted to require such, we hold that the jury was not precluded from considering any of the mitigating evidence proffered by appellant."); *Nika v. State*, 198 P.3d 839, 856 (Nev. 2008) (rejecting defendant's claim of ineffective assistance of counsel when his attorney failed to request an instruction that the jury did not have to agree unanimously on the existence of specific mitigating circumstances; "no instruction placed constraints on the jury's ability to find mitigating circumstances"); *Commonwealth v. Frey*, 554 A.2d 27, 30-31 (Pa. 1989) (rejecting claim that jurors might have believed that they were required to unanimously find a specific mitigating fact or facts because they were not given a specific jury instruction concerning nonunanimity; "individual jurors were free to weigh whatever mitigating circumstances they perceived, regardless of whether other jurors agreed that those circumstances were established by the evidence. The perceptions of even one juror, alone, with regard to mitigating circumstances, would be sufficient to deny the unanimity required for a sentence of death."); *Hackett v. Price*, 381 F.3d 281, 301 (3d Cir. 2004) finding no reasonable likelihood that jurors could have understood the instructions to require unanimity

*Hope*,[20] the special mitigation issue read, "If you unanimously find from your consideration of all the evidence that there are no mitigating factors sufficient to preclude consideration of a death sentence, then you should sign the verdict requiring the court to sentence the defendant to death."[21] The defendant claimed that the trial judge erred when he refused to give an instruction "on the nonunanimity requirement for mitigating factors." The Illinois Supreme Court disagreed, stating that the instructions did not "convey the impression that unanimity was required before a mitigating factor could be considered in the balance."[22] After all, "a 'sentencing jury is required to unanimously determine that mitigating factors sufficient to preclude the death penalty *do not exist* before that penalty can be imposed.'"[23] Thus, the belief by just one juror that some mitigating circumstance exists is sufficient to prevent a unanimous rejection of mitigation.[24]

Thus, looking at the jury instructions as a whole, it would be illogical to suppose that there is "a reasonable likelihood" that the jury understood and applied the mitigation issue

---

in finding a specific mitigating fact; "When the jury found unanimously that there was no mitigating circumstance, it left no room to speculate that perhaps one juror was confused about unanimity requirements and therefore precluded from considering mitigating evidence.").

[20] 658 N.E.2d 391, 410-11 (Ill. 1995).

[21] *Id.* at 411.

[22] *Id.*

[23] *Id.* (emphasis in original; quoting *People v. Ramey*, 604 N.E.2d 275 (Ill. 1992)).

[24] *Id.*

in a way that prevented even one juror's consideration of any and all mitigating facts, regardless of whether any other juror considered that same fact mitigating.[25]

2.     *The Evidence.*

Second, we look at the state of the evidence and its weight. Although the evidence concerning mitigation was not "open and shut," it was not overwhelming either. Appellant, although unmarried, was the father of a young child. His own father had been murdered when he was young and, as a result, he had always suffered from depression and sometimes had thoughts of suicide. His sister was raped by a stranger and later impregnated by appellant's stepfather. He was placed on probation as a juvenile because he "became involved with negative peer groups" and started abusing drugs and alcohol. These drugs made him prone to violence and to lose impulse control. Nonetheless, he had worked in an auto detailing shop since his teen years. He was twenty-one at the time he robbed and murdered Hash Patel, the owner of a mini-mart store and a man whom appellant knew.

On the other hand, the State presented evidence of appellant's lengthy criminal history. As a juvenile, appellant was twice adjudicated for assaulting his mother. He was instructed to attend anger management programs, but did not complete them. As an adult,

---

[25] *See Boyde v. California*, 494 U.S. 370, 380-81 (1990) (assessing whether there is a "reasonable likelihood" that jurors might have been mislead or confused by an allegedly ambiguous jury instruction on mitigation evidence and noting that "[j]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Difference among them in interpretation of instructions may be thrashed out in the deliberative process, with commonsense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting.").

he was convicted of evading arrest and possession of marijuana stemming from an incident in which he was driving a stolen car and led police on a lengthy car chase.     He was convicted of assaulting his girlfriend–he dragged her down the stairs, repeatedly punched her, bit her, and threw her in a ditch–when she was eight months pregnant with his baby. Appellant later told her that he had shot at a person named "C-Smalls" with a .45 caliber semi-automatic.

The day before robbing and killing Hash Patel, appellant again punched his girlfriend and told her that he was going to kill her because she had told him that she did not want to see him any more.  Immediately before committing the capital murder, appellant forced his way into Daphane Edwards's apartment at gunpoint, made her perform oral sex on him twice, and then stole her car after kissing each of her young children–who had seen the sexual assault upon their mother–on the cheek.  After murdering Mr. Patel, appellant picked up a prostitute and the two of them were in the bedroom of a "crack house," smoking crack cocaine when the police arrived.

Given the extent of the evidence of aggravating circumstances, and the relative paucity of mitigating circumstances, it is not particularly surprising that the jury returned its punishment verdict in less than four hours.  It did not send out any questions about the jury instructions.  All twelve jurors agreed that there were no mitigating circumstances sufficient to call for a life sentence.  Appellant makes no persuasive argument that there is a reasonable likelihood that, based on this evidence, one or more of the jurors had found a mitigating

circumstance but was somehow dissuaded from registering his verdict because he erroneously believed that every juror had to agree on the same specific mitigating fact.

3.     *The Arguments of Counsel.*

Third, we look to the arguments of counsel. Unlike the situation in *Ngo*, and other cases in which the attorneys or trial judge compounded the jury instruction error by making additional incorrect statements,[26] no one in this case erroneously suggested that the jurors had

---

[26] *Ngo v. State*, 175 S.W.3d 738, 750-52 (Tex. Crim. App. 2005); *see also Stuhler v. State*, 218 S.W.3d 706, 720 & n.44 (Tex. Crim. App. 2007) (finding egregious harm in jury charge when two separate offenses were submitted in disjunctive form to jury–one of which was not supported by the evidence–because, "[g]iven the emphasis in the State's evidence and in its final argument, at least some of the jurors might have convicted the appellant under the belief that she intentionally or knowingly caused an injury that the evidence does not support."); *Dolkart v. State*, 197 S.W.3d 887, 894 (Tex. App.—Dallas 2006, pet. ref'd) ("As in *Ngo,* the State told the jury in closing argument that it did not have to agree whether appellant committed assault by threat or bodily injury assault. Further, the evidence in this case was contested. Appellant testified and denied the offenses. She claimed she did not intend to hit Thomas but rather it was an accident. Some jurors could have believed appellant and determined that she did not intend to threaten or injure Thomas, but concluded her conduct in driving so close to Thomas was reckless and resulted in his injury. Other jurors could have disbelieved appellant and determined that she intentionally and knowingly followed Thomas too closely to threaten him, resulting only in his fear of imminent bodily injury. . . . Finally, the record reflects the jury had some confusion regarding the unanimity requirement as evidenced by the note it sent out asking, "Does an acquittal of a charge need to be unanimous in order to proceed to a lesser (next charge)?"); *Palmer v. State*, 222 S.W. 3d 92, 96 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (finding egregious harm when jury charge erroneously required jury to find the victim's prior rape allegation false beyond a reasonable doubt before it could use that evidence to impeach her credibility; prosecutor repeatedly stressed the erroneous instruction and error went to very basis of hotly disputed facts); *Guevara v. State*, 191 S.W.3d 203, 208 (Tex. App.—San Antonio 2005, pet. ref'd) (erroneous jury instructions caused egregious harm when jury was told it could convict defendant if he did not make a reasonable effort to prevent her murder and the prosecutor argued that jury could and should convict him on this non-existent legal theory).

to be unanimous in finding a particular mitigating circumstance. Instead, they repeated what they had explained to the jury during voir dire: "Mitigation, as we told you, you'll know it when you see it. You will believe it or you won't."

*4.      Other Relevant Information.*

Fourth, we look to other relevant information in the record. Here, both the trial judge and the attorneys repeatedly explained the concept of mitigation and the importance of each juror deciding what, if anything, he should find mitigating during voir dire. The trial judge explained:

> There's only two possible punishments. Okay?
> Once again, you're to consider, in answering the questions, the evidence that you hear, the circumstances of the offense–you know, what happened, is it bad, is it not as bad as you think–the criminal history, the good history of he defendant, mitigating circumstance, the background, the mental background of the defendant, all kinds of things. You're to consider it all. If it's given to you, you're to consider it. You don't disregard anything. You don't have to answer it a certain way, no matter what the evidence is for you. You're entitled to rule on it as you see fit. You can give it what weight you want yourself. But you're to consider it and listen to it all, and give it whatever weight you want.
> In other words, if you think this is a mitigating circumstance, that's fine. If you think it's not, that's also fine. It's up to you. It's your decision and your decision alone, the twelve of you. But you're to listen to it all and take it all into account, and disregard what you like, take into account what you don't like, or do like, and go from there.

Similarly, the attorneys repeatedly told the veniremen that "every juror is to look individually and decide for themselves, you know, whether or not . . . the evidence is mitigating." They emphasized over and over that each juror should individually decide whether a specific fact was or was not mitigating. "It's simply up–in your heart, do you believe there's something

about him that sufficiently mitigates [and calls for a] sentence of life rather than death." And "[s]ome people might think one thing is mitigating, Somebody might think, no, that's not." Given the extent to which the jurors were told that each one of them might find a particular fact mitigating while others did not, it defies logic to conclude that they suddenly forgot all of those earlier discussions during their deliberations. It is unreasonable to conclude that, merely because the nonunanimity of mitigating facts wasn't explicitly repeated once again in the jury instructions, the jurors were likely to have thought that they could not find a particular fact mitigating unless all twelve of them agreed on that particular fact. As Yogi Berra would say, "that is making too many wrong mistakes" about the jurors' common sense.

Therefore, although the trial court erred in omitting the statutory jury instruction reminding the jurors that they need not agree on what particular evidence supports an affirmative answer to the mitigation issue, this record does not show that appellant suffered any actual harm–much less "egregious harm"–as a result of that omission.

I join the opinion of the Court.

Filed: April 22, 2009

Publish