L-11- 000 65-CR

RECEIVED IN
The Court of Appeals
Sixth District

APR 1 5 2014

Texarkana, Texas
Debra Autrey, Clerk

F I L E D

APR 14 2014

SEVENTH COURT OF APPEALS
PEGGY CULP, CLERK



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0613-13

## LEONARD PIERSON, JR., Appellant

### v.

## THE STATE OF TEXAS

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE SIXTH DISTRICT COURT OF APPEALS
## BOWIE COUNTY

HERVEY, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, KEASLER, COCHRAN, and ALCALA, JJ., joined. PRICE, J., filed a concurring opinion. WOMACK and JOHNSON, JJ., concurred.

### O P I N I O N

Appellant, Leonard Pierson, Jr., was charged with indecency with a child and aggravated sexual assault of a child. After the victim completed her direct-examination testimony, the defense's first question on cross-examination was, "Did you also make an allegation that [Appellant] did these same things to his own daughter?" After a hearing, the trial court granted the State's request for a mistrial. Appellant then filed a pretrial

habeas-corpus application seeking to prevent a second trial on the basis of double jeopardy. The court denied that application because it again found (as it did at trial) that the mistrial was the fault of the defense and that there was no other appropriate remedy under the circumstances; thus there was a manifest necessity to retry Appellant, and his second trial was not precluded by double-jeopardy principles.

Appellant was convicted at his second trial of one count of indecency with a child and seven counts of aggravated sexual assault of a child. He was sentenced to life imprisonment. On appeal, Appellant argued that his second trial violated double-jeopardy principles, but the Texarkana Court of Appeals held that the trial court properly granted the State's request for a mistrial. *See Pierson v. State*, 398 S.W.3d 406, 420 (Tex. App.—Texarkana 2013). We granted Appellant's sole ground for review:

> The single question posed by Petitioner's trial counsel did not create the type of very extraordinary and striking circumstances necessary to sustain a finding of manifest necessity to declare a mistrial. The court of appeals either misapplied or misinterpreted precedent to reach its contrary conclusion.

We will affirm the judgment of the court of appeals.

## FACTUAL BACKGROUND

The State called the victim as its fifth witness in its case in chief. The first question the defense asked on cross-examination was, "Did you also make an allegation that [Appellant] did these same things to his own daughter?" The State objected to the question before it was answered, and the trial court excused the jury. During the hearing

outside the presence of the jury, the following exchange took place:

[PROSECUTOR]: That's way not allowed in cross. I mean, I think that's grounds for a mistrial.

[COURT]: Hold on, hold on a second.

[DEFENSE COUNSEL #2]: The other daughter was questioned by the CAC[1] based on the allegation.

[PROSECUTOR]: That's not admissible here.

[COURT]: Okay, what's the nature of the --?

[DEFENSE COUNSEL #2]: (Inaudible, whispering)

[PROSECUTOR]: Under 412, no way.

[COURT]: Hold on. We've got to have a hearing on the -- is the nature of the question that she has made a false outcry against somebody else or that she's made a true outcry against some other person?

[PROSECUTOR]: He can't prove that it's false, but [the victim] -- in the end of her CAC interview she said that [Appellant molested] his daughter too. That's it. She didn't say what he did, how he did -- I mean, there was nothing. That was the extent of it.

\*    \*    \*

[COURT]: It's not proof by a preponderance of the evidence or proof beyond a reasonable doubt; it's that it's actually false. That's the standard.

[DEFENSE ATTORNEY #2]: I don't know how -- how would you ever prove that though?

[COURT]: An admission. That's the only way any court's ever found it, was an admission by the victim that it was actually false.

---

[1]The acronym "CAC" is an abbreviation for Child Advocacy Center.

[PROSECUTOR]: And -- there's no way I can recover from that.

[COURT]: I don't see how you can either.

[DEFENSE ATTORNEY #2]: Well, yeah, that doesn't get into the actual --. There's not any way an instruction would cure that?

[PROSECUTOR]: No. I mean, I'm asking for a mistrial. It's out there. There's no way I can get it --.

[COURT]: I don't see how there's any possible way that a jury could disregard this kind of testimony. And in the event of an appeal, the [S]tate's got no right -- I mean in the event of an acquittal, the [S]tate's got no right of an appeal, so they're absolutely prejudiced if the jury hears it.

After a twenty-four-minute recess, the trial court resumed the hearing and asked the defense to "flesh out [their] argument a little bit more about the basis for the admissibility of [the] cross examination." The defense explained that the victim stated at the end of her CAC interview that Appellant did "the same sorts of things, same -- made the same allegations, that he had committed those allegations against his own daughter, who's now sixteen years old. So she made an allegation that the alleged perpetrator in her case had done the same types of things to his own biological child." Defense counsel went on to argue that Appellant's biological daughter denied ever being molested, and that Appellant's biological daughter's denial would be relevant to the victim's credibility. The following exchange then took place between the court, the prosecutor, and the defense:

[COURT]: But it's a collateral issue. I mean, you're attacking her credibility with a statement not -- not her own allegation that he's done this to others but her statement that he said he's done it to other people.

[DEFENSE COUNSEL #2]: No, sir, Judge, that wasn't the -- my

understanding of it was she claimed that this happened in DeKalb[, Texas] in her presence when he abused his daughter, I believe is my understanding.

[PROSECUTOR]: No, that was her cousin.

[DEFENSE COUNSEL #2]: Oh, that's the cousin?

[DEFENSE COUNSEL #1]: Yes.

[DEFENSE COUNSEL #2]: Okay.

\* \* \*

[COURT]: So we don't even really know what the basis for her statement was.[2]

[DEFENSE COUNSEL #1]: We don't know the basis of the statement, just that she made the allegation and that it was subsequently investigated and went nowhere.

At this point, the court stated that

I find that [issue] to be so far removed from this case to begin with, it's a collateral issue that could only interject confusion to the jury[.] [T]here's not even enough to substantiate that it's even her own statement, that she's alleging it happened, but that it's her understanding that it happened . . . .

The judge then cited and discussed a number of cases that he felt led to the conclusion

that the defense's question was improper because the answer would not lead to admissible

evidence. *See Lopez v. State*, 86 S.W.3d 228 (Tex. Crim. App. 2002); *Garcia v. State*, 228

S.W.3d 703 (Tex. App.—Houston [14th Dist.] 2005); *Hughes v. State*, 850 S.W.2d 260

---

[2]The victim allegedly made the allegation in question during an interview with the Sexual Assault Nurse Examiner. However, that video was not offered into evidence at trial. In addition, at Appellant's second trial, Pamela Freeman, a registered nurse, referred to a report that apparently contained the content of what was said by or to the victim, but that report was not offered into evidence. *See Pierson*, 398 S.W.3d at 414 n.5.

(Tex. App.—Forth Worth 1993); *Thompson v. State*, 669 S.W.2d 420 (Tex.

App.—Houston [1st Dist.] 1984). Returning to the case at hand, the judge concluded,

> I find that the evidence is not admissible. It is unduly prejudicial -- it's not relevant, first of all, it's unduly prejudicial. It serves only to interject issues that are collateral which would potentially confuse the jury, and I don't know how it can be cured with an instruction to the jury. So with that said, I'm going to grant the [S]tate's motion for a mistrial. Since I find that this was done because of actions of the defendant and not because of the actions of the [S]tate, then there's no jeopardy that attaches.

After the judge granted the State's motion for a mistrial, Appellant filed a pretrial

habeas-corpus application[3] to prevent his second trial from taking place because he

argued that his second trial violated the double-jeopardy prohibition of the United States

Constitution. In his application, Appellant alleged that "the mistrial was caused by the

prosecutor's objection to defense counsel's attempt to elicit whether the alleged victim

had made other allegations against [Appellant,]" and that "the mistrial in this case was

caused by the prosecutor either intentionally or recklessly."[4] *See Ex parte Bauder*, 974

---

[3]The same judge presided over Applicant's first trial, ruled on Applicant's habeas-corpus application, and presided over Applicant's second trial.

[4]The prosecutor's response, in relevant part, to Applicant's allegation was that,

> [PROSECUTOR]: [I] am absolutely appalled, offended. If everybody remembers, I was sitting right there when it happened, not saying a word.

> The fact that that's what they'[ve] alleged partially in this motion is absolutely . . . absurd since . . . . I wasn't saying anything. And so for [defense counsel] to say that, "I swear this is true and correct," uh, wow.

S.W.2d 729 (Tex. Crim. App. 1998).[5] The defense also changed its argument with respect

to the basis for the admissibility of the question asked: the defense argued that the

question was proper as evidence of an extraneous offense. *See* TEX. R. EVID. 404(b).

Furthermore, Appellant argued that "there was just simply a question asked, did you make

this allegation. There was no inference o[f] whether it was true or not true." Appellant

concluded by asserting that there was no manifest necessity to grant the State's request

for mistrial because the State was not harmed by the question and that there were less

drastic means to remedy the problem than granting a mistrial. The State vigorously

disputed Appellant's characterization that it intentionally or recklessly caused the mistrial

by objecting, and it asserted that the question precipitating the mistrial was incurable and,

therefore, there was a manifest necessity to grant a mistrial.

After hearing the arguments of the parties, the court concluded that "it stretches

credulity just a bit to say that the question did not imply that it was true or not true[,]" and

that, out of the two possible intentions in asking that question on cross-examination, only

one possibility made sense: "the only reasonable interpretation of the purpose for the

question was that the answer would be yes, and then the defense would litigate the truth

of that allegation, in essence interjecting that the child victim had made a false allegation

---

[5]Although Appellant argues that this Court's opinion in *Bauder* controls the double-jeopardy issue in this case, we note that *Bauder* was overruled by this Court over eight years ago. *See Ex parte Bauder*, 974 S.W.2d 729 (Tex. Crim. App. 1998), *overruled by Ex parte Lewis*, 219 S.W.3d 335, 371 (Tex. Crim. App. 2007) ("[W]e overrule *Bauder* and its progeny (*Bauder III, Lee II, Peterson II*).").

of sexual abuse by the defendant against his own daughter, and since that allegation was

false, . . . she's a liar, and since she's a liar, . . . this allegation's false."[6] The judge went

on to state,

> I don't see how you can reasonably interpret this question as not
> being harmful to the [S]tate. It proposes to interject before the jury an
> allegation upon which they are to speculate that the child made a false
> accusation that [Appellant] did this to his own daughter, and that therefore,
> if that allegation is false, then this one must be false as well. And . . . it's
> not the kind of evidence interjected before the jury that the Court believes
> could be cured with an instruction to disregard. [O]n top of . . . that since
> the [S]tate has no right of appeal in the event of an acquittal, it is prejudicial
> to the [S]tate for the defense to interject something that was not admissible
> to begin with, that is highly prejudicial, and then simply ask the jury to
> disregard and wait for the jury to acquit because they can't really disregard
> it.
>
> All of that leads the Court to the only conclusion that I could reach,
> which was the conclusion I reached at that time, which was, this was a
> mistrial caused by the fault of the defense and that there was no remedy
> short of a mistrial, and therefore it meets the test of manifest necessity
> which does not preclude retrial under the Fifth Amendment. So the motion,
> or the application for writ of habeas corpus, is denied and we'll go forward
> with the jury selection.

Appellant was convicted at his second trial of one count of indecency with a child

and seven counts of aggravated sexual assault of a child. Relevant to this case, Appellant

appealed his convictions on double-jeopardy grounds. The Texarkana Court of Appeals

---

[6]*See* TEX. R. EVID. 404(a) (stating that generally "[e]vidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion . . . ."). The other intention that the court agreed was possible, but highly unlikely, was that defense counsel thought the victim had made a *true* allegation that Appellant had also sexually abused his biological daughter and that the defense intended to inform the jury that their client was guilty of sexually assaulting his daughter. For reasons that are obvious, the trial judge did not consider this a legitimate intention, despite Appellant's argument to the contrary.

held that the trial court did not abuse its discretion in granting the State's request for a mistrial because "[t]he trial court explicitly considered and rejected the alternative of giving an instruction to disregard, and the record provides some support for the trial court's conclusion that the intent of the question was to prejudice the jury, rather than a realistic attempt to solicit admissible evidence." *Pierson*, 398 S.W.3d at 419–20. We granted review to determine whether the court of appeals misapplied or misinterpreted existing precedent when it held that the trial court was within its discretion to find that there was a manifest necessity to grant a mistrial.[7]

## DISCUSSION

Generally a criminal defendant may not be put in jeopardy by the State twice for the same offense. U.S. CONST. amend. V; *see Hill v. State*, 90 S.W.3d 308, 313 (Tex. Crim. App. 2012). The prohibition on double jeopardy was extended to the states by the United States Supreme Court through the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784 (1969), *overruling, Palko v. Conneticut*, 302 U.S. 319 (1937). In cases tried before a jury, a defendant is placed in jeopardy when the jury is empaneled and sworn, and "because jeopardy attaches before the judgment becomes final, the constitutional protection also embraces the defendant's 'valued right to have his trial

---

[7]The precise ground for review is:

The single question posed by Appellant's trial counsel did not create the type of very extraordinary and striking circumstances necessary to sustain a finding of manifest necessity to declare a mistrial. The court of appeals either misapplied or misinterpreted existing precedent to reach its contrary conclusion.

completed by a particular tribunal.'" *Arizona v. Washington*, 434 U.S. 497, 504 (1978) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)); *see Hill*, 90 S.W.3d at 314. Despite the general prohibition against jeopardy-barred trials, there are two exceptions when a criminal defendant may be tried a second time without violating double-jeopardy principles if the prosecution ends prematurely as the result of a mistrial: (1) if the criminal defendant consents to retrial or (2) there was a manifest necessity to grant a mistrial. *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011); *see Washington*, 434 U.S. at 505–06. These exceptions are recognized because valid reasons exist for a jury to be discharged before the conclusion of a trial and not all of those reasons "invariably create unfairness to the accused[.]" Thus, a defendant's right to have his trial conducted by a particular tribunal "is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." *Washington*, 434 U.S. at 505.

To prevail in a double-jeopardy claim, a criminal defendant must first show that he or she is being tried for the same offense for which the mistrial was declared over the defendant's objection. The burden then shifts to the State to demonstrate a "manifest necessity" (also referred to as a "high degree" of necessity) for the mistrial. A trial court's decision to declare a mistrial is limited to the inquiry of if there was a "manifest necessity" to grant a mistrial. *See Garza*, 337 S.W.3d at 909. We have stated that a trial court abuses its discretion if it declares a mistrial "without first considering the

availability of less drastic alternatives and reasonably ruling them out[,]" although the basis for the mistrial need not be expressly articulated in the record. *Id.* And the Supreme Court has stated that "the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." *Washington*, 434 U.S. at 511. As an appellate court, it is our function to review the record and determine if the trial judge exercised "sound discretion" when granting a mistrial. *Id.* at 514.

## ANALYSIS

### A. Appellant did not consent to the State's request for a mistrial.

The court of appeals stated in its opinion that "[t]he State concedes that [Appellant] opposed the State's request for a mistrial, and the record supports that position." *Pierson*, 398 S.W.3d at 412 n.4. The State has not challenged the conclusion of the court of appeals in its petition for discretionary review or in its brief on the merits, and after reviewing the record, we agree with the court of appeals that Appellant did not consent to the granting of a mistrial at his first trial.

### B. The court of appeals correctly concluded that the trial court did not abuse its discretion when it excluded the question at issue on cross-examination.

With respect to the trial judge's decision to exclude the propounded question as improper, the court of appeals relied on this Court's opinion in *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008), to conclude that Appellant failed to carry his

burden under Rule 104(a) of the Texas Rules of Evidence to prove the admissibility of the evidence he sought to introduce and, therefore, that the cross-examination question was proper. We agree with the conclusion of the court of appeals.

In *Vinson*, we stated that "[i]n our criminal justice system, the proponent of evidence ordinarily has the burden of establishing the admissibility of the proffered evidence." *Vinson*, 252 S.W.3d at 340; *see* TEX. R. EVID. 104(a) ("Preliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . ."). Our statement from *Vinson* remains valid law in Texas, and we hold that it controls the evidentiary issue in this case. As the court of appeals noted in its opinion,

> The record in this case is not sufficiently developed for us to determine whether evidence of the false allegation at issue was admissible. Although the defense announced an intent to call [Appellant]'s biological daughter to testify to the falsity of the allegation, **the record is unclear concerning what the prior false allegation was**. The attorneys disagreed concerning whether [the victim] claimed to have personally observed some abuse or to have heard a report of abuse. As summarized by the trial court, "So we don't even really know what the basis for her statement was."[8]

*Pierson*, 398 S.W.3d at 416–17 (emphasis added). In short, the parties and the court were not sure what the content of the victim's allegation actually was, only that an allegation of some kind was made.[9] However, without knowing the content of the victim's allegation,

---

[8]In response to the judge's comment, one counsel for Appellant stated, "We don't know the basis of the statement, just that she made the allegation and that it was subsequently investigated and went nowhere."

[9]Different theories of what the victim had alleged were discussed at different points during this process, including that the victim alleged that Appellant had also sexually abused his biological daughter (prosecutor), Appellant told the victim that he had also sexually abused his

it appears that defense counsel hoped, more than intended, that the answer elicited would lead to admissible evidence.

Despite not knowing exactly what the victim had alleged, the record indicates that Appellant's theory of admissibility at trial was that the question asked was intended to impeach the victim's veracity because Appellant would call his biological daughter to the stand to deny the victim's allegation. In addition, at a hearing on Appellant's pretrial application for a writ of habeas corpus, Appellant argued for the first time that "trial counsel . . . made the trial court aware of the possibility that the bad relationship between [Appellant] and [the victim]'s mother was a motive for the mother to coach [the victim] to make false accusations." Because this new theory of admissibility was presented only at the pretrial conference at the second trial, and the trial court had no opportunity to consider it at the first trial, we will not consider it. *See* TEX. R. APP. P. 33.1. We note, however, Appellant's continuation of the argument attempting to prove that the victim was a liar.[10] However, the habeas judge addressed Appellant's argument before denying

---

biological daughter (trial judge), or the victim stated that she thought that Appellant had also sexually abused his biological daughter (prosecutor).

[10]The following exchange occurred in response to defense counsel's question to Kathy Lach, a Sexual Assault Nurse Examiner, that testified at Appellant's second trial: "And there's been trials you've testified in that the jury has found the child was not telling the truth, hasn't there?":

[COURT]: You've now interjected before the jury that there have been other cases where she's testified that the jury has found that the child was lying.

*     *     *

his pretrial application for a writ of habeas corpus and skeptically concluded,

> [COURT]: Okay. Well, I think it is -- I think it stretches credulity just a bit to say that the question did not imply that it was true or not true. If the Court were to find that the answer to the question was 'yes, and those allegations are true,' then essentially defendant would have interjected an extraneous offense against his own client. That's the only conclusion you could reach. So the only reasonable interpretation of the purpose for the question was that the answer would be yes, and then the defense would litigate the truth of that allegation, in essence interjecting that the child victim had made a false allegation of sexual abuse by the defendant against his own daughter, and since that allegation was false, therefore she's a liar, and since she's a liar, therefore, this allegation's false.

In *Flannery v. State*, 676 S.W.2d 369, 370 (Tex. Crim. App. 1984) (per curiam), this

---

> [DEFENSE COUNSEL #1]: But Judge, it's cross examination. We're entitled to get into her opinions and findings.

> [PROSECUTOR]: Objection based on relevance, speculation. It's horribly prejudicial.

> [DEFENSE COUNSEL #1]: What about, what she's testifying to has nothing to do with this case.

> [COURT]: [Defense counsel], it really does. It's rebuttal to your theory that the child must be lying because she didn't have injuries. And she's testifying as to what her experience, her training, her background has demonstrated, that that's not always the case. That doesn't discuss any specific case, it doesn't talk about this case. It's just simply rebutting the theory that you've proposed that the child must be lying because she doesn't have trauma.

> \*　　\*　　\*

> [COURT]: So you have opened that door. All they're doing is rebutting your theory. Your theory is, there's always trauma.

> [DEFENSE COUNSEL #1]: No, my theory in this case did they find any trauma.

> [COURT]: No, that's the -- the theory you have proposed to this jury is, there's always trauma. Since there is no trauma --.

Court explained the general rule that impeachment on a collateral matter is impermissible. *Id.* Although exceptions to the general rule exist, and sometimes the rules of evidence must give way to a defendant's Sixth Amendment right to confront his or her accuser,[11] Appellant has not shown that any such exception applies in this case. Rather, Appellant made an inadequate showing that the complaining witness herself made the allegation that Appellant sexually abused his biological daughter and that the allegation was false. Under these circumstances, the trial court was free to conclude that Appellant failed to carry his burden, as proponent of the evidence, to show that the question was anything more than a prelude to impeachment on a collateral matter and an impermissible attempt to attack the complaining witness's general credibility with evidence of specific instances of conduct. *See* TEX. R. EVID. 608(b). Based on our review of the opinion of the court of appeals and the record in this case, we hold that the court of appeals correctly concluded that the trial court did not abuse its discretion when it excluded Appellant's cross-examination question as impermissible. Appellant failed to carry his burden, as the proponent of the evidence, that the victim's answer was admissible. *Vinson*, 252 S.W.3d at 340; *see* TEX. R. EVID. 104(a).

**C. The court of appeals appropriately gave "great deference" to the ruling of the trial court.**

---

[11]*See, e.g., Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (discussing the relationship between the Texas Rules of Evidence and a defendant's Sixth Amendment right to confront the witnesses against him or her, including a qualified right to attack the accusers "general credibility or to show . . . possible bias, self-interest, or motives in testifying").

The court of appeals held that it was required "to grant the trial court's evaluation of potential juror bias 'great deference.'" *See Pierson*, 398 S.W.3d at 419 (citing *Ross v. Petro*, 515 F.3d 653, 661 (6th Cir. 2008)).

Appellant argues that the court of appeals mistakenly gave "great deference" to the trial court's ruling granting the mistrial. He appears to assert that this standard does not apply when assessing the correctness of granting a mistrial based on a question asked, but not answered, during cross-examination. However, Appellant does not explain why a trial court's ruling should not be accorded great deference when it is based on evaluating potential juror bias, nor does he suggest what level of deference would have been appropriate according to him. Instead, Appellant opines, "[h]ad the court of appeals not given 'great deference' to the trial court's decision to grant a mistrial, the court of appeals would have likely found that the trial court did in fact abuse its discretion."

The seminal case on this issue is *Arizona v. Washington*, 434 U.S. 497 (1978). In *Washington*, the respondent was found guilty of murdering a hotel clerk. *Id.* at 498. Later, he was granted a new trial when it was discovered that the State had withheld exculpatory evidence. *Id.* During the voir dire at the respondent's second trial, the State alluded to testimony of a witness from a previous trial. Then, during defense counsel's voir dire, he stated "that there was evidence hidden from [respondent] at the last trial." *Id.* at 499. Later in the defense's opening arguments, counsel explained in greater detail that the jury would hear about how the State had withheld exculpatory evidence, and that the Arizona

Supreme Court ordered that the respondent should receive a new trial in light of the State's *Brady* violation. *Id.* After opening arguments, the State requested a mistrial based on defense counsel's comments, which the court denied. *Id.* at 499–00. The following morning, the State renewed its request for a mistrial based on additional research that it argued showed that "there was no theory on which the basis for the new trial ruling could be brought to the attention of the jury, that the prejudice to the jury could not be repaired by any cautionary instructions, and that a mistrial was a 'manifest necessity.'" *Id.* at 500. This time the trial court granted the State's motion. *Id.* at 501.

Our precedent and a review of *Washington* do not support Appellant's alleged distinction between opening arguments and questioning on cross-examination. *See Harrison v. State*, 788 S.W.2d 18, 22 (Tex. Crim. App. 1990) ("[*Washington*] emphasizes that in the context of a declaration of mistrial involving an assessment of the prejudicial impact upon the jury of some impropriety, the trial judge's decision is entitled to great deference . . . ."). Instead, in *Washington*, the Supreme Court's discussion of when great deference should be accorded to the ruling of a court granting a mistrial turned on the trial judge's unique ability to evaluate whether the complained of action biased the jury and, if so, to determine if that bias can be remedied by an instruction to disregard. *See Washington*, 434 U.S. at 512–13. For example, the Supreme Court stated that an improper opening statement creates a risk that "the entire [jury] panel may be tainted[,]" and that an instruction to disregard "will not necessarily remove the risk of bias that may be created

by improper argument." *Id.* Again referring to potential bias, the Supreme Court stated that

> **There are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias.** He has seen and heard the jurors during their *voir dire* examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more "conversant with the factors relevant to the determination" than any reviewing court can possibly be.

*Id.* (footnote omitted) (emphasis added). Finally, the Supreme Court also contrasted the situation it was presented with in *Washington*—opening arguments during which an entire jury could be biased—with a situation in which only one juror on a jury is biased and could be replaced with an alternate juror instead of granting a mistrial. *See id.* at 512 n.31 ("[I]f there is a suggestion of individual juror bias, it may be possible to replace that juror with an alternate."). Thus, it does not appear that the Supreme Court considered when the improper comments came to be as important as when a trial judge uses his or her unique ability to evaluate any potential bias created by an improper comment. *See Harrison*, 788 S.W.2d at 22. As a result, the reasoning explicated by the Supreme Court in *Washington* with respect to bias created by improper argument carries the same force on cross-examination because the potential for biasing the jury remains, and the trial judge is still in the best position to gauge whether the jury has been biased because the judge listened to the tone of the question as it was delivered and observed the apparent reaction of jurors. *See Washington*, 434 U.S. at 512–13. We hold that when a trial judge's decision to

grant a mistrial is based on the risk of juror bias, that ruling is entitled to "great deference," regardless of whether the complained of conduct took place during opening arguments or took the form of a question on cross-examination.

### D. The court of appeals did not err in holding that the trial court acted with sound discretion when it determined that an instruction to disregard would be insufficient.

Appellant argues that the court of appeals and trial court incorrectly concluded that an instruction to disregard defense counsel's question would not have cured the error, if any. Appellant goes on to assert that, "[j]ust as the court of appeals dodged the issue of the trial court's erroneous evidentiary ruling, the court of appeals dodged this issue by creating a tenuous factual distinction instead of reaching the proper conclusion." Appellant supports his argument by citing Justice Moseley's dissenting opinion from the court of appeals that argues that "a jury instruction should have sufficiently saved the trial, rendering a mistrial unnecessary." *Pierson*, 398 S.W.3d at 426 (Moseley, J., dissenting) (citing *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003); *Westbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000); *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000) (per curiam)).

With respect to the argument of what deference applies to the judge's "manifest necessity" ruling, the court of appeals properly held such a ruling should be accorded great deference when the trial court exercised "sound discretion." *Pierson*, 398 S.W.3d at 418 (citing *Renico v. Lett*, 559 U.S. 766 (2010)). This deference also applies to a trial judge's determination that an instruction to disregard would be insufficient to remediate

any juror bias because, just as a trial court is in the best position to hear the tenor of the question asked and to see the apparent reactions of jurors and determine if they have been biased, the trial judge is also in the best position to determine whether an instruction to disregard would be sufficient to remedy any bias for the same reasons.

At the hearing following Appellant's question on cross-examination, the following relevant exchange took place with respect to an instruction to disregard,

> [DEFENSE ATTORNEY #2]: Well, yeah, that doesn't get into the actual --. There's not any way an instruction would cure that?
>
> [PROSECUTOR]: No. I mean, I'm asking for a mistrial. It's out there. There's no way I can get it --.
>
> [COURT]: I don't see how there's any possible way that a jury could disregard this kind of testimony. And in the event of an appeal, the [S]tate's got no right -- I mean in the event of an acquittal, the [S]tate's got no right of an appeal, so they're absolutely prejudiced if the jury hears it.

Later, when the trial judge made his ruling granting the State's request for a mistrial, he stated again, "I don't know how [the bias] can be cured with an instruction to the jury."

Based on these comments, we agree with the court of appeals that "[t]he trial court's actions demonstrate deliberate consideration, rather than a precipitous ruling[,]" and that the trial court considered and ruled out "less drastic alternatives" than a mistrial, including if an instruction to disregard would have been sufficient under the circumstances. *Pierson*, 398 S.W.3d at 418–19. Furthermore, we are mindful of the Supreme Court's statement in *Washington* that

> [u]nless unscrupulous defense counsel are to be allowed an unfair

advantage, the trial judge must have the power to declare a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred.

*Washington*, 434 U.S. at 513 (quoting *United States v. Dinitz*, 424 U.S. 600, 612 (1976)).[12] Although a reviewing court may be required to accord great deference to the ruling of a trial court granting a mistrial, that trial court's ruling is not insulated from appellate review. However, on this record, we cannot say that the trial judge acted irrationally or irresponsibly when he determined that an instruction to disregard would not remediate any bias.[13] We hold that the court of appeals did not err when it concluded that the trial court exercised sound discretion in determining that an instruction to disregard was not a viable alternative to the granting of a mistrial.[14]

## CONCLUSION

The court of appeals correctly concluded that the trial court was within its discretion to declare a mistrial based on manifest necessity due to the actions of defense counsel. Therefore, Appellant's second trial was not barred by double jeopardy. We

---

[12]This is not to say that counsel in this case was unscrupulous or that he sought an unfair advantage.

[13]*See Washington*, 434 U.S. at 515.

[14]*See also Pierson*, 398 S.W.3d at 418 ("We conclude that the trial court exercised sound discretion in (a) granting the parties an opportunity to argue their positions on declaration of a mistrial, (b) considering alternatives to a mistrial, and (c) using its discretion to conclude the defense lacked a legitimate basis for the question.").

affirm the judgment of the court of appeals.

Hervey, J.

Delivered: April 9, 2014.

Publish



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0613-13

### LEONARD PIERSON, JR., Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### BOWIE COUNTY

PRICE, J., filed a concurring opinion.

## CONCURRING OPINION

I join the Court's opinion. I write separately for two reasons. First, while I agree that the appellant did not satisfy the predicate for impeachment by proof of a prior false accusation, that does not necessarily mean that the question he posed would invariably be deemed inappropriate had the proper predicate been laid. Notwithstanding language in this Court's opinions in *Flannery v. State* and *Hammer v. State*,[1] we have yet to disclaim the

---

[1] See *Flannery v. State*, 676 S.W.2d 369, 370 (Tex. Crim. App. 1984) (prohibiting the impeachment of a witness on a collateral matter); *Hammer v. State*, 296 S.W.3d 555, 564-65 (Tex.

admissibility of evidence of prior false accusations to impeach the testimony of complaining witnesses in sex offense cases by attacking their general credibility. In this context, the Sixth Amendment right to confrontation may yet be held to trump the general prohibition against impeachment on collateral matters and the prohibition in Rule 608(b) of the Rules of Evidence against impeachment by specific conduct.[2] Second, while I agree with the Court that a reviewing court owes great deference to the trial court's judgment whether an instruction to disregard an inappropriate question obviates the need for a mistrial, I think it worthwhile to acknowledge the appellate presumption of the efficacy of such instructions to disregard, which we entertain whenever the *defendant* argues that only the radical remedy of a mistrial can save him from what he regards as indelible prosecutorial prejudice. Considering the risk that a precipitous mistrial poses to the defendant's "valued right to have his trial completed by a particular tribunal[,]"[3] trial judges should not lightly dismiss the possibility that a stout instruction to disregard will serve to ameliorate any potential for jury

---

Crim. App. 2009) (suggesting that evidence of prior false accusations by a sexual assault victim should be deemed inadmissible as impeachment, even in the face of the Confrontation Clause, if it is offered simply to impugn her general credibility, because such evidence calls for nothing more than "prohibited propensity" inferences, which violate TEX. R. EVID. 608(b)).

[2] *See* TEX. R. EVID. 608(b) ("Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.").

[3] *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).

contamination—especially from what, as here, amounts to an unanswered question of ambiguous import on defense counsel's part.

## I.

The appellant's first question upon cross-examining the complaining witness in this case was: "Did you also make an allegation that [the appellant] did these same things to his own daughter?" If, in fact, the complaining witness ever claimed to have had *personal knowledge* that the appellant sexually abused his own daughter, and in fact that claim was *false*, asking such a question as a predicate to impeachment *might* have been a permissible exercise of his Sixth Amendment rights under the Confrontation Clause, notwithstanding any contrary rule of evidence that the State might have interposed against its admissibility.[4] Even so, as the court of appeals essentially pointed out,[5] the real problem in this case is that the

---

[4] *Lopez v. State,* 18 S.W.3d 220, 225-26 (Tex. Crim. App. 2000); *id.* at 227 (Keller, J., concurring). *See also Billodeau v. State,* 277 S.W.3d 34, 40 (Tex. Crim. App. 2009) (citing *Lopez* for the proposition that evidence of prior false accusations may be admissible to impeach the complaining witness in a sex offense case because "this Court has acknowledged that the Confrontation Clause of the Sixth Amendment may require admission of evidence that [TEX. R. EVID.] 608(b) would otherwise bar"); *Palmer v. State,* 222 S.W.3d 92, 95 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) (evidence of prior false accusations of sexual abuse may be admissible to impeach complaining witness so long as actual falsity is adequately established); *Thomas v. State,* 669 S.W.2d 420, 423 (Tex. App.—Houston [1st Dist.] 1984, pet. ref'd) (Sixth Amendment Confrontation Clause error to exclude evidence of the complaining witness's false prior accusations of rape in a prosecution for aggravated sexual assault of a child).

[5] *Pierson v. State,* 398 S.W.3d 406, 413-17 (Tex. App.—Texarkana 2013). The court of appeals in this case believed evidence that the complaining witness lied about the appellant having molested his own daughter *could* be admissible if it showed bias on the complaining witness's part, but could *never* be admissible merely as a general attack upon her credibility, *Lopez* and the Confrontation Clause notwithstanding. *Id.* Although our unanimous opinion in *Hammer v. State,* 296

appellant was unable to establish the predicate facts by which he could assert admissibility under such a theory, as required by Rule 104(a) of the Rules of Evidence.[6] The Court today seems to confirm this aspect of the court of appeals's opinion when it concludes that the appellant has "failed to carry his burden as the proponent of the evidence that the victim's answer was admissible."[7] I agree with this. But I wish to emphasize that we have not yet altogether ruled out the possibility that the Confrontation Clause requires that a defendant be permitted to develop evidence of prior false accusations by the complaining witness, at least in sex offense prosecutions, as general evidence of the complaining witness's lack of credibility, notwithstanding Rule 608(b) of the Rules of Evidence.[8]

## II.

I also agree that it cannot be said, based upon the record in this case, that the trial judge acted "irrationally[,]" "irresponsibly," or "precipitately in response to the prosecutor's request for a mistrial."[9] It is certainly true "that the extent of the possible bias" that may have

---

S.W.3d at 564-66, might suggest such a conclusion, and we did cite several federal cases in *Hammer* for that proposition, *id.* at 565 n.26, we did not formally so hold in *Hammer*. Nor does the Court expressly so hold today.

[6] TEX. R. EVID. 104(a).

[7] Majority Opinion at 15 (citing *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008)).

[8] *See* notes 4 & 5, *ante*; TEX. R. EVID. 608(b).

[9] *Arizona v. Washington*, 434 U.S. 497, 514-15 (1978).

been engendered by the inappropriate question in this case "cannot be measured," and "that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions."[10] I am inclined to think that an instruction to disregard in this case would have sufficed to remove the potential for juror bias. Indeed, I do not think there was a grave potential for actual juror bias here, since the motive behind the question would not have been immediately apparent to the jury and, in any event, there was no reply.[11] "Nevertheless, the overriding interest in the evenhanded administration of justice requires that [a reviewing court] accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper" question.[12]

In the further interest of the evenhanded administration of justice, however, I feel compelled to remind the bench and bar of our appellate presumption of the efficacy of jury instructions. When defendants request mistrials on account of prosecutorial indiscretions,

---

[10]

*Id.* at 511.

[11]

It is not altogether apparent to me that the jury would have realized that the appellant's question was meant as a predicate to impeaching the complaining witness. While that may be "the only reasonable interpretation" that a discerning judge or lawyer might place on the question, *see* Majority Opinion at 14 (quoting the trial court), the jury more likely found itself simply puzzled that the appellant's lawyer would ask such a seemingly self-immolating question. In that event, the potential for burning the *State* would have been purely theoretical; an instruction to disregard should have been more than sufficient to extinguish the flame.

[12]

*Washington,* 434 U.S. at 511.

we have been quick to recognize the ameliorative impact of judicial instructions to disregard:

> In the vast majority of cases in which argument is made or testimony comes in, deliberately or inadvertently, which has no relevance to any material issue in the case and carries with it some definite potential for prejudice to the accused, this Court has relied upon what amounts to an appellate presumption that an instruction to disregard the evidence will be obeyed by the jury. In essence this [C]ourt puts its faith in the jury's ability, upon instruction, consciously to disregard the potential for prejudice, and then consciously to discount the prejudice, if any, in its deliberations.[13]

Every case must be considered on its own facts, of course, but we have observed that reversal of a conviction for the failure of the trial court to declare a mistrial following an instruction to disregard an improper question is "rare."[14] Sauce for the defendant's goose ought to be sauce for the prosecutor's gander.

Moreover, we have typically relied upon the efficacy of instructions to disregard in the context of resolving issues of procedural default. A defendant who requests a mistrial without first seeking an instruction that the jury disregard some objectionable and potentially incendiary matter that has made its way into evidence has only preserved error for appeal if the appellate court can say that the instruction to disregard would not, in any event, have had the desired effect on the facts of the particular case.[15] In that context, too, we have

---

[13] *Waldo v. State*, 746 S.W.2d 750, 753 (Tex. Crim. App. 1988) (quoting *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)) (citations and internal quotation marks omitted).

[14] *Swallow v. State*, 829 S.W.2d 223, 227 (Tex. Crim. App. 1992), *overruled on other grounds by Randolph v. State*, 353 S.W.3d 887, 895 (Tex. Crim. App. 2011).

[15] *See Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) ("[T]he request for an

essentially applied an appellate presumption of efficacy.[16]

In *Garza*, we recently observed:

> Once the defendant shows he is being tried for the same offense after declaration of a mistrial to which he objected, a heavy burden shifts to the State to justify the trial court's declaration of the mistrial. The State must demonstrate a "manifest necessity" for a mistrial, which is to say a "high degree" of necessity, and the trial court's discretion to declare a mistrial based on manifest necessity is limited to, and must be justified by, extraordinary circumstances. That discretion is abused, we have said, whenever the trial court declares a mistrial without first considering the availability of less drastic alternatives and reasonably ruling them out. But the trial court appropriately exercises its discretion to declare a mistrial—that is to say, manifest necessity for the mistrial exists—when the particular circumstances giving rise to the declaration render it impossible to arrive at a fair verdict before the initial tribunal, when it is simply impossible to continue with trial, or when any verdict that the original tribunal might return would automatically be subject to reversal on appeal because of trial error.[17]

The appellant's question in this case, however erroneous or inflammatory, did not make it impossible to continue the trial, nor did it inject something into the record that would result in automatic reversal on appeal. So the only basis for manifest necessity presented here is that the question so contaminated the jury as to render it impossible for the initial tribunal to

---

instruction that the jury disregard an objectionable occurrence is essential only when . . . such an instruction could have had the desired effect, which is to enable the continuation of the trial by a[n] impartial jury. The party who fails to request an instruction to disregard will have forfeited appellate review of that class of events that could have been 'cured' by such an instruction. But if an instruction could not have had such an effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal.").

[16]

    *See id.* at 70, 72 (reversing the court of appeals's holding that the instruction to disregard could not have cured the "objectionable occurrence" in that case).

[17]

   *Garza*, 337 S.W.3d at 909.

arrive at a fair verdict. Could the appellant's jury have arrived at a fair verdict had it been instructed, in no uncertain terms, consciously to recognize the potential for prejudice and consciously to put the appellant's question (and any prejudicial implications they may or may not have drawn from it) out of its collective mind while deliberating?

I am personally inclined to think that a fair trial was not impossible had the trial court given such an instruction to disregard. But I am willing to concede that reasonable minds could disagree on the efficacy of such an instruction in this case. Under these circumstances, the court of appeals did not err to defer to the trial court's judgment on that question, consistent with the dictates of *Arizona v. Washington.* I would only urge that, in order to justify that "highest degree of respect" that the Supreme Court has accorded to the trial court's discretion in this regard, trial judges take great care not to "act precipitately in response to the prosecutor's request for a mistrial."[18] What that means to me is that, when making determinations of manifest necessity *vel non*—that is to say, when balancing the State's right to a fair trial designed to end in just judgments against the defendant's valued right to have his trial completed by a particular tribunal[19]—trial judges must give the same consideration to the remedial potential of an instruction to disregard that they would almost routinely give such an instruction any time it is the *defendant* who seeks a mistrial.

---

[18] *Washington*, 434 U.S. at 511, 515.

[19] *Garza*, 337 S.W.3d at 909 (citing *Wade*, 336 U.S. at 689).

With these additional remarks, I join the Court's opinion.


FILED:  April 9, 2014
PUBLISH