

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00539-CR

Jesus **PEÑA-FLORES**, III,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 21-04-0179-CRA
Honorable Russell Wilson, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice, concurring in the judgment

Delivered and Filed: March 20, 2024

AFFIRMED

Appellant Jesus Peña-Flores was convicted of aggravated assault against a public servant for pointing a gun at a police officer. During the jury trial, Peña-Flores testified. The State sought to impeach him with a prior conviction for evading arrest with a vehicle. Peña-Flores objected, but the trial court allowed the State to proceed. Peña-Flores now appeals the trial court's ruling, arguing that his conviction for evading arrest was too old and prejudicial to be admissible. We affirm the trial court's ruling.

**BACKGROUND**

This case began when Officer Garcia of the Poteet Police Department responded to a domestic violence call from Peña-Flores's girlfriend who reported that Peña-Flores had damaged her car windshield.

When Officer Garcia arrived at Peña-Flores's house, he parked behind Peña-Flores's girlfriend's car and approached her to ask what was happening. His body camera recorded the scene in front of him and his conversations.

In Officer Garcia's body camera video, Peña-Flores's girlfriend can be seen explaining that she was trying to collect her things from the house to leave when Peña-Flores smashed the windshield of her car. Her son sits in the passenger seat of the car. At the same time, Peña-Flores shouts from the house, "Her shit's already out!"

In the video, when Peña-Flores's girlfriend tells Officer Garcia that Peña-Flores smashed her windshield, Peña-Flores is heard yelling, "Like you did to mine?!" And then, "Like the way you broke my TV?!" Peña-Flores's girlfriend tells Officer Garcia that she had some place to be. Peña-Flores yells again, "The same way you broke my TV!"

Officer Garcia then walks around the car, and Peña-Flores yells unintelligibly. Officer Garcia, still at the car, says, "I need your ID." Peña-Flores insists, "No you don't!" Officer Garcia responds, "Yeah, I do." Peña-Flores then yells, "It's a f-ckin ID. Get the f-ck over here."

The video then shows Officer Garcia walking over to the metal screen door under a large carport awning. He tells Peña-Flores "Step out here, man." Peña-Flores answers, "Yeah f-ckin right," and he then pushes the inner door nearly closed. Officer Garcia repeats, "Step out here, man." Peña-Flores opens the inner door, points a gun at Officer Garcia's face through the screen door, stating, "F-ck you." They both repeat themselves two more times.

Peña-Flores stands behind the screen door wearing a white T-shirt and white backwards ballcap. Officer Garcia backs up, stating, "Really?" Peña-Flores says, "Get the f-ck outta here." Officer Garcia responds, "Really?" They both repeat themselves. Peña-Flores repeats his demand with his gun still pointed at Officer Garcia's face as Officer Garcia asks, "You wanna point a gun at me?" They both repeat themselves again, twice. Peña-Flores slams the inner door as Officer Garcia calls for backup. Officer Garcia directs Peña-Flores's girlfriend and her son to move out of Peña-Flores's view and then takes cover behind his police SUV. Peña-Flores throws his gun outside, as Officer Garcia loudly directs Peña-Flores to step out of the house. Peña-Flores yells unintelligibly in response.

Officer Garcia continues to direct Peña-Flores to step outside and Peña-Flores continues to refuse for eighteen minutes, during which time another patrol unit arrives as backup. Peña-Flores then walks outside but refuses to approach the police or kneel on the ground. He allows Officer Garcia to handcuff him and check for weapons, but he complains that Officer Garcia originally approached the house with mace in hand. Officer Garcia explains that he approached with handcuffs in hand, not mace.

At trial, Peña-Flores testified about the incident, first stating, "I didn't really know [Officer Garcia] was an officer until he started coming up to me." Peña-Flores stated that he saw something in Officer Garcia's hand that he suspected "was a gun or something." He said he felt angry at first but then fearful because one of his family members had been killed by a police officer.

Peña-Flores admitted to pointing his gun, a BB gun, at Officer Garcia, explaining that he was protecting himself from whatever Officer Garcia seemed to be holding in his hand. He also testified that he closed his door because he was fearful. Peña-Flores then testified that he did not notice that Officer Garcia was a police officer until he started backing away from the screen door.

On cross-examination, the State questioned Peña-Flores about the incident and about his 2011 prior felony conviction for evading arrest with a vehicle. Peña-Flores admitted that he previously pleaded guilty to evading arrest, though he claimed not to know that an officer was pursuing him when he evaded arrest.

During closing argument in the present case, Peña-Flores argued that he did not immediately realize that Officer Garcia was a police officer. He further argued that he drew his gun because he felt fearful of imminent harm when Officer Garcia approached his door. The jury nevertheless convicted Peña-Flores of aggravated assault against a public servant. Peña-Flores now appeals the conviction.

## STANDARD OF REVIEW

"In reviewing a trial court's decision to admit prior convictions, we will reverse only upon a showing of a clear abuse of discretion." *Morgan v. State*, 891 S.W.2d 733, 735 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (citing *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992)).

## RULE 609

### A.    Parties' Arguments

Peña-Flores argues that the trial court abused its discretion by allowing the State to impeach him with questions about his prior conviction for evading arrest because the prior conviction was too old and too unfairly prejudicial to be admitted under Rule 609. The State argues 1) that it provided a basis for the trial court to find that Peña-Flores was released from custody on his prior conviction within ten years of trial and 2) that the prejudicial effect of cross-examining Peña-Flores about the conviction did not outweigh the probative value of impeaching him with questions about the past offense.

**B.      Law**

Rule 609 delineates the parameters for introducing a witness's prior convictions as impeachment evidence. *See* TEX. R. EVID. 609; *Meadows v. State*, 455 S.W.3d 166, 170 (Tex. Crim. App. 2015).

Subsection (a) declares evidence of criminal conviction presumptively admissible if:

(1) the crime was a felony or involved moral turpitude, regardless of punishment;

(2) the probative value of the evidence outweighs its prejudicial effect to a party; and

(3) it is elicited from the witness or established by public record.

TEX. R. EVID. 609(a); *Meadows*, 455 S.W.3d at 170.

But subsection (b) prohibits admitting a prior conviction for impeachment "if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later," unless the court determines, in the interests of justice, that "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect." *See* TEX. R. EVID. 609(b); *Jackson v. State*, 50 S.W.3d 579, 591 (Tex. App.—Fort Worth 2001, pet. ref'd) (citing TEX. R. EVID. 609(b)); *accord Meadows*, 455 S.W.3d at 170.

To weigh probative value against prejudicial effect under Rule 609, Texas courts consider the following factors: (1) the impeachment value of the prior crime,[1] (2) the temporal proximity of the past crime relative to the charged offense and the witness' subsequent history,[2] (3) the similarity between the past crime and the offense being prosecuted,[3] (4) the importance of the

---

[1] "The impeachment value of crimes involving deception is higher than crimes that involve violence, and the latter have a higher potential for prejudice." *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992).

[2] The second *Theus* factor "will favor admission if the past crime is recent and if the witness has demonstrated a propensity for running afoul of the law." *Id*.

[3] "If … the past crime and the charged crime are similar, the third factor will militate against admission." *Id*. The reason for this is that a jury should not be encouraged to "convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense." *Id*.

defendant's testimony, and (5) the importance of the credibility issue. [4] *Theus*, 845 S.W.2d at 880; *Davis v. State*, 259 S.W.3d 778, 782 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Hankins v. State*, 180 S.W.3d 177, 180–81 (Tex. App.—Austin 2005, pet. ref'd)) (applying *Theus* factors in Rule 609(b) analysis).

It is, of course, the proponent's responsibility to establish admissibility under the factors and elements stated here. *See White v. State*, 549 S.W.3d 146, 152 (Tex. Crim. App. 2018). For example, if the opposing party objects to the admissibility of impeachment evidence under Rule 609, then "[t]he proponent of the evidence must identify to the trial court the basis of admissibility for the proffered evidence." *Id*. (citing *Pierson v. State*, 426 S.W.3d 763, 772 (Tex. Crim. App. 2014); *Vinson v. State*, 252 S.W.3d 336, 340 (Tex. Crim. App. 2008)). This means that the proponent "must show, or must have satisfactorily shown, that they have carried their burden of demonstrating, *by a preponderance of the evidence*, that the evidence is admissible." *Id*. (emphasis added).

## C.     Analysis

### 1.  *Trial Discussion on Peña-Flores's Prior Conviction*

At trial, the State sought to introduce Peña-Flores's prior conviction for evading arrest from 2011, and Peña-Flores objected.

The trial court inquired as to the date of Peña-Flores's release from confinement for his prior conviction. The State answered that Peña-Flores was released on July 12, 2012—within ten years of trial. Peña-Flores argued that the State's proffered date was merely an estimate, which provided no definitive answer to the trial court's question.

---

[4] "The last two factors are related, because both depend on the nature of a defendant's defense and the means available to him of proving that defense." *Id*. "As the importance of the defendant's credibility escalates, so will the need to allow the State an opportunity to impeach the defendant's credibility." *Id*.

The trial court asked: "If [the prior conviction]'s more than ten years old, which I don't have proof that it's not, I have under, I guess, 609, [are] there specific reasons why this should be considered not unduly prejudicial?"

The State answered:

> Your Honor, for one, the sentence was in October, and the punishment was for nine months out of state jail. So that would get us past that mark. We would be within the ten years for the conviction in this case. Along with that, Your Honor—and, Your Honor, that would be—that would be the reason to admit this prior conviction, Your Honor.

Peña-Flores re-urged his objection. The State asked for a brief pause.

After the pause, the State informed the trial court that Peña-Flores's criminal history report showed that he was received by the state jail division on November 10, 2011, and that there was a sentence expiration date of June 9, 2012. Peña-Flores argued that the expiration date was not analogous to a release date.

The trial court asked, "If you get out on 80/20, is that just a bald release, or are you still under some kind of parole or holdback on a state jail?" Counsel for Peña-Flores answered, "Your Honor, I think it's a credit, so he would be out 80/20." The trial court overruled Peña-Flores's objection and allowed the State to proffer its exhibit concerning Peña-Flores's prior conviction.

When the State continued its cross-examination of Peña-Flores, it did not proffer an exhibit. Rather, it relied on Peña-Flores's testimony to establish that he was a convicted felon. Peña-Flores admitted that he had a prior felony conviction for evading arrest with a vehicle from 2010 or 2011—more than ten years before trial. The State did not question Peña-Flores about his release date.

*2. Application of Rule 609*

The record in this case is not sufficiently developed for us to definitively determine whether Peña-Flores was released on his 2011 felony conviction within ten years of trial. *See Pierson*, 426 S.W.3d at 771; *see also Morris v. State*, 214 S.W.3d 159, 187 (Tex. App.—Beaumont 2007) (holding that where there is no evidence regarding the date on which a witness was released from confinement, and the prior conviction at issue is more than ten years old, the trial judge could properly exclude the impeachment evidence). The State *argued* that Peña-Flores's criminal history report supported a finding that Peña-Flores was released from prison within ten years of trial, but it presented *no evidence* in support. *See Pierson*, 426 S.W.3d at 771; *Morris*, 214 S.W.3d at 187. Without evidence in support, we cannot say that the State met its burden to prove by a preponderance of the evidence that Peña-Flores's prior conviction was presumptively admissible. *See White*, 549 S.W.3d at 152. Therefore, we must consider whether the State's cross-examination of Peña-Flores regarding his prior conviction was substantially more probative than prejudicial according to the *Theus* factors. *See* TEX. R. EVID. 609(b); *Theus*, 845 S.W.2d at 880–81; *Davis*, 259 S.W.3d at 782.

*3. Theus Factors*

a. Impeachment Value of the Prior Crime

Peña-Flores's prior conviction for evading arrest is neither violent nor involving deception. We consider this factor to be neutral. *See Jones v. State*, No. 03-17-00720-CR, 2018 WL 2437378, at *9 (Tex. App.—Austin May 31, 2018, pet. ref'd) (mem. op., not designated for publication) (citing *Smith v. State*, Nos. 01-05-01095, 01-05-01096-CR, 2007 WL 79475, at *10 (Tex. App.—Houston [1st Dist.] Jan. 11, 2007, pet. ref'd) (mem. op., not designated for publication)).

b. Temporal Proximity of the Past Crime Relative to the Charged Offense and the Witness's Subsequent History

Peña-Flores's prior conviction for evading arrest was not recent, and the State presented no evidence that Peña-Flores's release from custody in that matter occurred within ten years of trial. The State also offered no recent convictions. This factor weighs against admission. *See Theus*, 845 S.W.2d at 881.

c. Similarity Between the Past Crime and the Offense Being Prosecuted

Peña-Flores's past crime of evading arrest was not like the aggravated assault being prosecuted. During cross-examination, Peña-Flores briefly commented on his past offense of evading arrest with a vehicle, stating that he was driving a truck with no mirrors and did not know a police officer was pursuing him until he arrived at his grandmother's house. The commonest thread between the two offenses was that, as the State argued, Peña-Flores struggled to submit to authority figures. Because Peña-Flores's past conviction was demonstrably dissimilar to the offense being prosecuted, this factor weighs in favor of admission. *See id.*

d. Importance of the Defendant's Testimony

The only evidence Peña-Flores offered in his defense was his testimony. Certainly, he had the right to offer no evidence at all. *See* U.S. Const. amend. V. But Peña-Flores put forth a hybrid necessity defense by arguing that he 1) had to point a gun at Officer Garcia to protect himself against imminent harm and 2) did not know the man at his door was a police officer. *Cf. Davis v. State*, 490 S.W.3d 268, 276 (Tex. App.—Fort Worth 2016, pet. ref'd) (explaining that a necessity defense requires a defendant to "admit to each element of the offense, including both the act and the requisite mental state, to claim the justification to excuse his otherwise criminal conduct"). Pursuing a necessity defense required Peña-Flores to present some evidence of his state of mind. *See Auston v. State*, 892 S.W.2d 141, 145 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (citing

*Leach v. State*, 726 S.W.2d 598, 600 (Tex. App.—Houston [14th Dist.] 1987, no pet.)). In the absence of other evidence to support a finding that Peña-Flores reasonably feared imminent harm, his testimony became vital to his defense. *See id*.

Peña-Flores argues that Officer Garcia's body camera video was sufficient to establish his defense, minimizing the importance of his testimony. *See id*. However, the video does not show Officer Garcia's hands. Therefore, Peña-Flores had to testify that he saw a "gun or something" in Officer Garcia's hand for the jury to even consider excusing Peña-Flores's otherwise criminal conduct. *See Auston*, 892 S.W.2d at 145 (citing *Leach*, 726 S.W.2d at 600).

The video also does not show Officer Garcia from Peña-Flores's vantage point behind his metal screen door, which meant that Peña-Flores could not rely on it to argue that he could not identify Officer Garcia as a policeman. *See Leach*, 726 S.W.2d at 600 (rejecting a defendant's unsupported factual argument as conjecture).

It was, of course, the State's burden to prove that Peña-Flores knew Officer Garcia was a policeman,[5] but the facts in evidence leading up to Peña-Flores's testimony supported a finding that Peña-Flores knew Officer Garcia was a policeman before Peña-Flores drew his gun. The video showed that 1) Officer Garcia arrived at Peña-Flores house in uniform,[6] which included his bulky gun belt; 2) Peña-Flores was audibly responding to his girlfriend's conversation with Officer Garcia from inside the house, which meant that he knew she was reporting the damage he caused; 3) Peña-Flores was audibly responding to Officer Garcia's instruction to provide identification, which meant that Peña-Flores could infer that Officer Garcia was a policeman. Peña-Flores may

---

[5] *See Stewart v. State*, No. 05-08-00052-CR, 2009 WL 2488504, at *5 (Tex. App.—Dallas Aug. 17, 2009, no pet.) (mem. op., not designated for publication) (citing *Payton v. State*, 830 S.W.2d 722, 730 (Tex. App.—Houston [14th Dist.] 1992, no pet.)).
[6] Officer Garcia briefly turned his body camera on himself to confirm that the camera was functioning.

have been able to argue his rebuttal rather than provide testimony,[7] but the greater strength in stating his purported inability to recognize Officer Garcia as a policeman adds at least some importance to Peña-Flores's testimony. *See Theus*, 845 S.W.2d at 881.

We conclude that Peña-Flores's strategy escalated the importance of his testimony as well as the State's need to impeach it. This factor weighs in favor of admission. *See id.*

e. Importance of the Credibility Issue

Because Peña-Flores's testimony was essential to his chosen defense, the importance of his credibility escalated. *See id.* Conversely, the State's prosecution depended on the jury not believing Peña-Flores, which escalated its need to impeach him. *See id.* This factor weighs in favor of admission. *See id.*

4. *Theus Outcome*

A review of the *Theus* factors shows that the probative value of Peña-Flores's prior conviction substantially outweighed its prejudicial effect. *See id.*; *Davis*, 259 S.W.3d at 782. Based on this record, we overrule Peña-Flores's sole issue on appeal.

**CONCLUSION**

Under Rule 609(b) and our consideration of the *Theus* factors, we conclude that the record in this case supports a finding that the probative value of Peña-Flores's prior conviction substantially outweighed its prejudicial effect. Accordingly, we conclude that the trial court did not abuse its discretion by admitting evidence of Peña-Flores's prior conviction. We affirm the trial court's judgment.

Patricia O. Alvarez, Justice

Do Not Publish

---

[7] *But see Leach v. State*, 726 S.W.2d 598, 600 (Tex. App.—Houston [14th Dist.] 1987, no pet.).