**AFFIRMED and Opinion Filed May 3, 2021**



In The
# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-01389-CR

## EX PARTE CARL ALLEN WELCH

**On Appeal from the 196th District Court**
**Hunt County, Texas**
**Trial Court Cause No. 31,927**

## MEMORANDUM OPINION

Before Chief Justice Burns and Justices Myers and Pedersen, III
Opinion by Chief Justice Burns

In Carl Allen Welch's first trial for murder, the trial court declared a mistrial over appellant's objection. Before a second trial could occur, appellant filed a pretrial application for writ of habeas corpus alleging a second prosecution for the same offense exposed him to double jeopardy. The trial court denied relief and appellant now appeals the trial court's order. In his sole issue on appeal, appellant contends the trial court erred and abused its discretion in denying habeas relief because he did not violate a motion in limine as urged by the State in seeking the mistrial, and the trial court and State erroneously placed upon him the burden to show there was no manifest necessity for a mistrial. We affirm.

BACKGROUND

It is undisputed that appellant shot and killed Terry Cale. Appellant claims he shot Cale in self-defense. The State indicted appellant for murder and the case was set for trial.

*The Pretrial Hearing and Order in Limine*

On August 16, 2019, the trial court conducted a pretrial hearing. During the pretrial hearing, both sides presented motions in limine for the trial court to consider. Among the disputed items in the defense motion, appellant requested the exclusion of hearsay statements made by anyone who would not be testifying at trial. When asked by the trial court why such an exclusion could not be addressed by a hearsay objection, defense counsel explained, "I think I also don't want any statements of what certain people are going to testify to in the opening of the case—opening argument of the case, if they, in fact, don't testify." In denying this portion of the defense motion in limine, the trial court explained:

> Isn't the State, though—I mean, aren't they allowed to make an opening statement where they summarize what they believe the evidence will be? I mean, let's say that [the prosecutor] gets up and makes a statement about, "I think John Doe is going to say X, Y, and Z when he's called to testify," and then John Doe absconds. Did he violate this limine? Because, I mean, otherwise, I'm not going to be able to—I can't allow him to summarize his case in his opening statement, because we don't actually know if somebody is actually going to testify."

Thereafter, the trial court considered the State's motion in limine Paragraph III (referred herein as Part III), which provided:

The State files this Motion in Limine requesting the defense be required to request a hearing outside the presence of the jury to determine the admissibility of evidence or testimony related to the issues detailed below before attempting to admit such evidence or illicit [sic] such testimony:

. . .

III. Any question of a witness intended to illicit [sic] evidence of past misconduct by the victim Terry Cale or a character trait of Terry Cale, regardless of whether the alleged conduct lead to an arrest or conviction. *This request includes testimony or evidence that the victim was a member or former member of any organization commonly known as a "biker gang" or "motorcycle club."*

(emphasis added.) During the discussion of Part III, the trial court asked counsel why she opposed granting it:

> How are you hampered if you have to have a hearing first? The reason I say that is, because obviously we all know there are instances that are described in paragraph 3, that might be admissible. There are many that are specifically inadmissible. I mean, again, why shouldn't the Court decide, "Yes, now that I have heard this much of the evidence, that is admissible" or "it's not admissible," outside the presence of the jury instead of letting a question be asked and then ruling on an objection at that time. This is not something that is clearly admissible is what I am saying. . . . It just depends on the circumstances.

In response, counsel responded that a

> blanket prohibition or limine would be inappropriate because a defendant, under Rule 12 of the Texas Rules of Evidence, a defendant is entitled to introduce evidence of a pertinent character trait of the victim of the crime by the accused.

The trial court then reiterated that it would still need to determine whether the character trait was pertinent. To which counsel replied:

> Well, and I believe, Your Honor, that the character trait of . . . this deceased, having been a member of a biker gang or motorcycle club is

relevant, because he was known as a violent member of a biker gang or motorcycle club, and it goes directly to the reputation of the deceased for violence and for, therefore, the reasonableness of my client's fear and belief that self-defense was required.

The trial court then ruled on Part III:

All right. I am going to grant the limine, and you will be required to approach, but, of course, I'm making no ruling on the ultimate admissibility of the information. I just need to hear exactly what it is you want to do before I allow it, because so many character traits are not admissible, and so I just want to make sure that I know what we're doing before we do it in the presence of the jury.

The trial court's written Order on State's Motion in Limine expressly states Part III is "GRANTED" without further elaboration.

*Opening Statements and the Hearing on Mistrial*

After the State delivered its opening statement, counsel began her opening statement by admitting appellant shot Cale. She told the jury the question for trial would be why it happened. Counsel then stated, "Now, you're going to hear about Terry Cale. Mr. Cale had been a member of the motorcycle gang the Bandidos." At that point, the State objected on the ground the defense had violated the Part III limine order. The trial court excused the jury and conducted a hearing.

During the hearing outside the jury's presence, the trial court accused counsel of violating the limine order by informing the jury that Cale was a gang member. Counsel responded that the order only applied to witness testimony and did not restrict her from discussing Cale's motorcycle gang membership during opening

–4–

statement.   After a brief discussion with counsel and the State, the trial court

responded:

> I'm sorry, I'm not going to have that argument. There's no question that when I limine out a particular subject it cannot be argued in opening statement without approaching the bench, period. I mean, I'm sorry, and I never would have said, nor did I, that I'm going to limit this questioning of witnesses and it's not going to include other statements made in the presence of the jury. I did not say it and that's not how a limine works.

The trial court asked the State for its position. The State argued counsel's

statement "violated if not the exact letter of that motion in limine, that it violated the

intent and the spirit of it."  The State requested for a mistrial and argued that whether

to admit evidence showing Cale's gang affiliation would be a hotly contested trial

issue.  The trial court and the State agreed that evidence of Cale's gang membership

was particularly significant because, in the period after Cale's death but before trial,

the Bandidos motorcycle club had fought a massive gun battle with a rival gang at

the Twin Peaks restaurant in Waco, Texas.  "The Twin Peaks Shootout," as the trial

court labeled it, had resulted in multiple deaths, numerous injuries, over one hundred

arrests, and had received extensive media publicity.

The trial court granted the State's request for a mistrial, explaining:

> The motion for mistrial is granted. State can defend it afterwards, but the motion for mistrial is granted on the grounds that while I do understand the argument that the limine said you can't ask the witness or solicit any evidence, the Court believes that you can't make a good-faith argument at opening statement that the evidence is going to show something the Court has specifically said the Court is going to have a hearing outside the presence of the jury before it determines whether

it's admissible. State wants a mistrial, you can have it, but you're going to have to defend it.

After the trial court ruled, the State expressed misgivings about the mistrial in light of the rules regarding double jeopardy. The State requested the trial court withdraw its ruling and give the State five minutes to reconsider whether to pursue a mistrial. The trial court agreed and withdrew its ruling on the mistrial.

When the trial court reconvened the hearing, the State persisted in requesting a mistrial and asked the trial court to make "certain findings or rulings." The State explained that it thought the trial court could order a mistrial based on manifest necessity in this case because defense counsel's statement was inappropriate even without violating the motion in limine. The State contended that less drastic alternatives would not cure the prejudice counsel's comment created. The State contended the issue of whether Cale was a motorcycle gang member would be a hotly contested issue at trial. The State also argued it had a good-faith belief that the information about Cale's motorcycle gang membership would not be admissible under rules of evidence 403 and 404 because of the publicity and notoriety the Bandidos had acquired after Cale's death because of the "Twin Peaks shootout in Waco, which resulted in the arrest of over a hundred people, the indictment of over a hundred people, and a well publicized mistrial in McLennan County, Texas . . . ." The State argued it would be hard to believe no one on the jury had heard about these subsequent events.

The State further explained the publicity it was concerned about:

Your Honor, the president, the vice-president and the national sergeant-at-arms of the Bandidos motorcycle club were all convicted. The president and vice-president were sentenced to federal prison for life. That was also in the news. The sergeant-at-arms testified against the other two and received 15 years in federal prison. This all happened after Terry Cale died. And as Your Honor is well aware, all of those prosecutions—I believe the Court is probably well aware, all of those prosecutions in McLennan County, Waco, fell apart after the first hung jury and mistrial against the Dallas chapter president, Jose Carrizal.

Your Honor, this is information that has nothing to do with Terry Cale because he was dead before any of that stuff happened. And that makes the evidence greatly more prejudicial than it is probative, Your Honor, in this case. And so for that reason, I don't believe the mentioning it in the first ten seconds of opening statement by defense counsel is something that can be unrung in this case.

In response, counsel again contended she did not violate the trial court's limine order. The trial court disagreed, but also "wish[ed] it were drafted differently." Nevertheless, the trial court continued:

I do think that you just need to be held to the terms of the order. And that order says that there should be no testimony elicited from witnesses or other evidence elicited that [Cale] was a member of the Bandidos or a motorcycle gang.

What I really want you to focus on is how, having told you you cannot ask witnesses in the presence of this jury any questions about that without first obtaining a ruling from the Court, you could make an argument to the jury that you have a good-faith belief the evidence was going to show that he was a member of that gang.

Counsel replied that the evidence would show Cale was a member of the Bandidos and had bragged about being an "enforcer" for the gang. Counsel explained the defense would argue appellant shot Cale in self-defense and evidence

–7–

of Cale's gang membership was relevant and admissible under article 38.36 of the code of criminal procedure[1] because it showed the men's relationship and appellant's "state of mind, the reasonableness of his fear, the character traits of the defendant, whether the defendant was the first aggressor in terms of coming at him at the house."

Counsel reiterated that the order in limine governed evidence at trial and opening statement was not evidence. Counsel added that she felt it was her duty as a zealous advocate for her client to take advantage of the State's failure to draft an appropriately broad motion in limine covering the subject.

Counsel admitted she did not know how the trial court would rule on the issue, but contended she had the right under existing law to admit evidence regarding "specific prior acts of violence relative to the ultimate confrontation" as part of appellant's defense. The trial court requested counsel to explain how the admissibility of specific acts of violence could be interpreted to make gang membership admissible and whether she had any cases that stated being a member of a gang—subsequently revealed to be violent—would be admissible. Counsel admitted she had no authority showing gang membership, in and of itself, was admissible. Counsel nevertheless stated she was

---

[1] Article 38.36 permits a murder defendant to offer testimony of relevant facts and circumstances surrounding the killing, the relationship between the accused and the deceased, and the condition of the mind of the accused at the time of the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.36.

not planning to talk anything about Twin Peaks or any of the rest of that mess. . . . I'm talking about what my client knew and was told by Terry Cale at that time, that he was an enforcer, that he took contracts and knocked heads for the Bandidos.

The trial court responded:

"So you don't have any case law that says that [Cale's] membership is admissible, which is what you told the jury, not that he had engaged in specific acts of violence, but that he was a member. So you don't have anything that says his membership is admissible."

After some additional argument, the trial court asked counsel:

"But what you told the jury was not that Mr. Cale had told him, I'm a violent man, but he was a member of the Bandidos. And what I'm asking is what law, if any, supports allowing that evidence in."

Counsel responded that if Cale decided to associate with a gang, that association was relevant to his character and reputation. Counsel indicated that she planned to admit into evidence reports from the Department of Justice identifying the Bandidos as one of "the big five criminal enterprise motorcycle gangs" and to show Cale had a gang tattoo.

The trial court then issued its ruling on the State's request for a mistrial:

the Court has not been presented with any support for the idea that membership in a gang is admissible. The Court has been presented with some evidence that specific acts of violence might be admissible. And again, the State has moved for a mistrial. The Court is going to grant it. And so the motion for mistrial is granted over the objection of the defendant.

–9–

After the State prompted the trial court to state on the record why there was a manifest necessity for a mistrial and why lesser steps were insufficient, the trial court continued:

> There is no way to now instruct the jury to disregard that this man was a member of the Bandidos. And again, the Court does note the general common knowledge of the activities of the Bandidos since the death of Mr. Cale, and those are highly inflammatory. Court will note that even as far away as little old Greenville, Texas, the events in Waco, Texas, were widely reported in the Herald Banner. There were photographs in the Herald Banner, which is our paper of record here in Hunt County, Texas. Not just in the Dallas Morning News and the Waco Tribune. I mean, it was everywhere for months, on and off reporting about the activities of the Bandidos in Waco, Texas, and the shootout. And the trials and the convictions and all of it was widely reported and those are all events that have arisen since the death of Mr. Cale.
>
> And so it was clearly highly inflammatory and the Court is going to find there is a manifest necessity, over the objection of the defendant, to grant a mistrial. And I do grant a mistrial at this time.
>
> All right. Because, again, I'm not convinced—and the Court is not going to say I would not have allowed that evidence in, I don't know, but I did say that before I allowed any witness to testify about it or any evidence related to it, and that would include any tattoos on the body of the deceased, any testimony from anybody that he was a member or an enforcer or that he engaged in activities, unless they were specific acts of violence—the Court wanted the opportunity before that was brought out in the presence of the jury to rule on that issue.
>
> And so, again, I understand the technical gap that exists between the motion in limine and it not including opening statements. But again, I don't know that there can be demonstrated a good-faith belief that that evidence was going to be presented to the jury.
>
> And so, again, on that basis, the manifest necessity and the statement regarding his membership in a criminal gang that, again, I cannot predict on the state of the argument and the evidence and whether there is additional case law of which I am not aware, that would make it

–10–

admissible. But I don't believe that that standing alone is admissible, which is why I asked for a hearing outside the presence of the jury so that I could make a determination whether it was or was not admissible before it was introduced into evidence.

The trial court went on to say that while the Waco shootout might not be "general knowledge" in the community, it was "incredibly widely reported." The trial court observed that neither side had conducted voir dire on the jury panel's knowledge of the Waco shootings and that the trial court understood the State appeared to have not conducted voir dire on the shootings because of its understanding of the order in limine. The trial court reiterated that it considered defense counsel's statement to the jury to be inappropriate and that it saw no alternative to a mistrial to fix the situation. The Court stated that holding defense counsel in contempt would not erase the statement from the jury's minds nor would an instruction to disregard the statement given the wide reporting of the events in Waco involving the Bandidos. The Court indicated that its ruling was based entirely on the statement that Cale was a member of the Bandidos motorcycle club.

*The Habeas Proceeding*

On November 7, 2019, the trial court conducted a pretrial hearing before the second trial was scheduled to begin. During that pretrial hearing, the trial court heard argument on appellant's application for writ of habeas corpus. In pressing for habeas relief, counsel argued that she could only be held to the limine order the trial court signed and not to a broader understanding that the issue of Cale's gang affiliation

–11–

was not to be mentioned before the jury. Counsel brought up that the trial court had said she should only be held to the order as written. The trial court responded that it had specifically told counsel during the pretrial hearing that the matter was not to be brought up before the jury without approaching for a hearing first. Counsel responded that the trial court's admonitions about not mentioning the issue went only to testimony from a witness. Counsel pointed out the trial court had said before trial, in discussing the defense motion in limine, that the State could summarize what it believed the testimony would be and even gave an example of the State summarizing evidence it might not be able to present. Counsel further noted that neither the Bandidos nor the events at Twin Peaks were addressed in the State's motion in limine or the trial court's order.

Rather than relying on the written motion and limine order, the State argued the trial court had admonished both parties not to mention Cale's gang affiliation before the jury without first approaching the bench for a determination of admissibility. The State argued Cale's gang membership would not be admissible because it constituted improper character impeachment that is almost never admissible unless the gang membership was a factor in the crime itself. Secondly, the State argued the evidence was inadmissible because it was prejudicial. The State contended that given the great deference given to the trial court to determine manifest necessity, the trial court made the right decision in declaring a mistrial. Lastly, the State argued that defense counsel did not give the trial court any case

–12–

authority showing the evidence would be admissible at the time the mistrial was declared.

*The Trial Court's Ruling and Findings*

The trial court denied relief and issued ten pages of findings of fact and conclusions of law. The trial court found, in part:

4. Part III of the State's motion in limine requested a hearing outside the jury's presence to determine the admissibility of testimony or evidence that the victim was a member or former member of any organization commonly known as a "biker gang" or "motorcycle club" before a party attempted to admit such evidence.

5. The State's written motion did not expressly request a hearing prior to a party mentioning the victim's alleged gang membership during opening statement.

6. During the pre-trial hearing, the prosecuting attorney did not state his request for a hearing before the parties could offer evidence of gang membership only applied to the testimony portion of the trial.

7. The Court orally granted the limine as to Part III. While doing so, the Court said the following: "I'm going to grant the limine, and you will be required to approach, but, of course, I'm making no ruling on the ultimate admissibility of the information. I just need to hear exactly what it is you want to do before I allow it, because so many character traits are not admissible, and so I just want to make sure that I know

–13–

what we're doing before we do it in the presence of the jury."
Reporter's Record (RR) Vol. 1 p. 21."

8. The Court's oral ruling did not limit the hearing requirement to the testimony portion of the trial.

9. The Court later signed an order granting the State's request under Part III.

The trial court found that comments made during opening statement, and particularly comments made at the beginning or end of opening statement, have a significant impact on the jury and a high likelihood of being remembered.

The trial court found counsel's comment about Cale's gang membership "was timed and delivered to provide maximum impact upon the jury" and, in context, was an attempt to impeach Cale's character based on his membership in a motorcycle gang. The trial court found that because counsel did not request a hearing before the trial court before informing the jury of Cale's gang membership, she had introduced a matter that was the subject of the trial court's limine ruling and did so in violation of the trial court's pretrial ruling and admonishments. The trial court found counsel made the comment intentionally to try to exploit what she believed was a variance between the trial court's "clear ruling and admonishments" and the written order. The trial court found it's practice and procedure was to not limit its limine rulings to cover only testimony and not opening statements, and that counsel's experience with the trial court, coupled with the trial court's pretrial ruling, made unreasonable counsel's "claimed belief" that the trial court's ruling applied only to testimony.

–14–

The trial court found counsel's comment that Cale was a Bandido raised the potential for jury bias because, while the public and potential jurors in Hunt County, Texas had a negative view of motorcycle gangs in general, the Bandidos have a particularly bad reputation due to their involvement in well-publicized acts of violence including the "Twin Peaks shootout" in Waco which resulted in multiple deaths, numerous arrests of motorcycle gang members, at least one trial, and repeated, lengthy coverage in local and regional media. The trial court found the potential for bias from counsel's comment was exacerbated because the notorious events involving the Bandidos occurred after Cale's death. The trial court found counsel's statement was so prejudicial and inflammatory that the jury would almost certainly remember it for the duration of the trial even if it was not proved in evidence, and that lesser measures short of mistrial, such as an instruction to disregard or holding counsel in contempt would not be sufficient to erase the information from the jurors' minds.

In its conclusions of law, the trial court concluded appellant was not being subjected to double jeopardy. It cited the Supreme Court's holding in *Arizona v. Washington*, 434 U.S. 497 (1978) as showing an improper opening statement can create manifest necessity for a mistrial. The trial court concluded it could find no authority requiring that trial counsel's statement expressly violate a limine order to justify a mistrial. The trial court concluded that in raising a claim of self-defense, appellant could introduce opinion or reputation evidence showing the victim had a

–15–

violent character or showing prior specific acts of violence, but that mere membership in a motorcycle gang would be inadmissible to prove the victim's violent character nor would it be a prior specific act of violence.

The trial court further concluded that membership in a criminal gang is considered highly inflammatory character evidence and is not generally admissible unless it is relevant for some reason other than showing character such as establishing motive, opportunity, plan, or intent. Even if relevant, the trial court further concluded, the evidence would only be admissible if it passed a balancing test satisfying rule of evidence 403. The trial court further concluded counsel did not demonstrate in her opening statement or the mistrial hearing that evidence of Cale's gang membership was relevant or that it had sufficient probative value to outweigh the extreme danger of unfair prejudice; thus, the trial court concluded, counsel had not shown Cale's membership in the Bandidos would have been admissible evidence for trial.

The trial court concluded the double jeopardy bar did not apply and appellant could be retried because counsel had created a manifest necessity for mistrial by introducing to the jury seemingly inadmissible facts subject to the trial court's order in limine, she could not explain how the facts would be admissible, and no less drastic remedy would correct the wrongdoing and lessen the taint of jury prejudice.

## STANDARD OF REVIEW

A defendant may file a pretrial application for writ of habeas corpus to allege a second prosecution for the same offense constitutes double jeopardy. *Ex parte Robinson*, 641 S.W.2d 552, 555 (Tex. Crim. App. 1982). An applicant for pretrial habeas relief must prove their claims by a preponderance of the evidence. *See Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006). In reviewing a trial court order denying habeas relief, we view the facts in the light most favorable to the trial court's ruling, and we uphold the ruling absent an abuse of discretion. *Id.* The trial court, as fact finder, is the exclusive judge of witness credibility. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006). We afford almost total deference to a trial court's factual findings when the findings are based upon credibility and demeanor. *Id.* If, however, the trial court's determinations are questions of law, or else are mixed questions of law and fact that do not turn on an evaluation of witness credibility and demeanor, then we owe no deference to the trial court's determinations and review them de novo. *State v. Ambrose*, 487 S.W.3d 587, 596–97 (Tex. Crim. App. 2016).

## DOUBLE JEOPARDY

A defendant may not be placed in legal jeopardy twice for the same offense. *See* U.S. CONST., amends. V, XIV; Tex. Const, art. I, §14. In a jury trial, jeopardy attaches when the jury is empaneled and sworn in. *Crist v. Bretz*, 437 U.S. 28, 37–38 (1978); *State v. Proctor*, 841 S.W.2d 1, 4 (Tex. Crim. App. 1992). After jeopardy

–17–

attaches, if the jury is discharged without reaching a verdict, double jeopardy will bar retrial unless either the defendant consents to a mistrial or a mistrial was declared because of manifest necessity. *Ex parte Garrels*, 559 S.W.3d 517, 522 (Tex. Crim. App. 2018).

"Manifest necessity" for a mistrial exists in very extraordinary and striking circumstances when there is a high degree of necessity for a mistrial. *Ex parte Fierro*, 79 S.W.3d 54, 56 (Tex. Crim. App. 2002). There are no precise rules and categories of circumstances for determining when manifest necessity exists justifying a mistrial. *Brown v. State*, 907 S.W.2d 835, 839 (Tex. Crim. App. 1992). Manifest necessity exists when the circumstances make it impossible for the jury to reach a fair verdict, when the trial is impossible to continue, or when continuing with trial would result in a verdict subject to automatic reversal on appeal because of trial error. *Ex parte Garza*, 337 S.W.3d 903, 909 (Tex. Crim. App. 2011).

The defendant bears the initial burden to prove the defendant is being tried again after a mistrial was declared over the defendant's objection. *Pierson v. State*, 426 S.W.3d 763, 770 (Tex. Crim. App. 2014). Once the defendant has made this showing, the burden shifts to the State to show the trial court declared a mistrial as a matter of manifest necessity. *Id*. A trial court abuses its discretion if it declares a mistrial because of manifest necessity without first considering lesser available alternatives and ruling them out. *Id*. The basis for the mistrial need not be reflected in the record. *Id*. When the trial court declares a mistrial due to an improper

–18–

comment by counsel in front of the jury, we accord the "highest degree of respect" to the trial court's evaluation of the likely impact of the comment on the jury's impartiality. *Id.* On appeal, we review the record to determine whether the trial court exercised sound discretion in granting the mistrial. *Id.*

## ANALYSIS

In his sole issue, appellant contends the trial court abused its discretion in not granting pretrial habeas relief because (1) counsel did not violate the limine order, and (2) the trial court and the State erroneously placed on appellant the burden of proof to show there was no manifest necessity for a mistrial. It is undisputed that a jury was empaneled, jeopardy had attached, and appellant did not request or consent to the declaration of a mistrial. Thus, the issue to resolve on appeal is whether counsel's opening statement created a manifest necessity for a mistrial, either because appellant violated the limine order or for some other reason. *See Fierro*, 79 S.W.3d at 56.

Appellant contends there was no manifest necessity for a mistrial because trial counsel's statement did not violate the trial court's limine order, there was no manifest necessity for a mistrial, the information about Cale's gang affiliation was admissible, and the trial court's cursory consideration of alternatives does not show a lesser action, such as an instruction to disregard, would not have cured the error. Appellant further contends that many of the trial court's findings of fact are not

supported by the record and he urges the Court to conduct a *de novo* review of the record.

The State responds that manifest necessity does not require the violation of a limine order. In this case, the State argues, trial counsel's statement introduced inadmissible, inflammatory evidence to the jury, and the trial court considered less drastic alternatives, none of which would have cured the error. The State further contends trial counsel did violate the limine order when considered in context.

*Manifest Necessity*

Contending that this appeal turns on whether trial counsel violated the motion and order in limine, appellant first argues trial counsel did not violate the terms of the State's motion in limine or the trial court's resulting limine order. Appellant points out that the State asked for a hearing only before "testimony or evidence" was elicited that Cale was a member or former member of a biker gang or motorcycle club, and trial counsel's opening statement was neither testimony nor evidence. Appellant points out the State did not seek to expand its motion in limine to include opening statements even after the discussion during the pretrial hearing in which appellant sought to limit certain information the State might seek to provide during opening statement. Appellant points out that in response to its motion in limine, the trial court denied appellant's efforts to restrict the State's opening statement,

indicating it thought the State had a right to explain its case, including what it thought the evidence at trial would show.

The State responds that the trial court's determination of whether evidence or information is likely to result in jury bias is subject to great deference and rarely disturbed on appeal. The State contends the record shows both parties recognized the importance of the information about Cale's motorcycle gang membership and it points to the trial court's pretrial admonishment that the parties were to approach and discuss the issue of admissibility before introducing the evidence to the jury. The State contends the trial court correctly determined that the gang membership evidence was inadmissible, defense counsel presented no argument that would allow for its admission, and even if admissible, its prejudice would outweigh its probative value under rule of evidence 404. The State argues the record shows the trial court considered and rejected less drastic alternatives before declaring a mistrial. Finally, the State contends appellant did, in fact, violate the trial court's limine order when one considers the purpose of a limine order.

A defendant who raises an issue of self-defense in a murder case may introduce evidence showing the victim's violent character, and such evidence may include opinion or reputation testimony to show the deceased acted in conformity with his violent nature. TEX. R. EVID. 404(a)(2); *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002). Specific, violent acts of misconduct are admissible only if they are relevant for a purpose other than to show character conformity such

as the reasonableness of the defendant's fear of danger or that the deceased was the first aggressor. TEX. R. EVID. 404(b); *Torres*, 71 S.W.3d at 760. When proving a deceased was a first aggressor, specific, violent acts may be admissible to show the deceased's intent, motive, or state of mind to be the first aggressor. *Torres*, 71 S.W.3d at 760–61. However, before a specific act of violence becomes admissible to prove self-defense, there must be evidence of some violent or aggressive act by the deceased that raises the issue of self-defense and that the specific extraneous conduct might explain. *See id.* at 761.

As the trial court stated during the hearing on mistrial, evidence that Cale was a gang member is not a specific, violent act of misconduct. Evidence of gang membership is generally inadmissible because it attempts to connect the individual to gangs in order to prove bad character. *See Pondexter v. State*, 942 S.W.2d 577, 584 (Tex. Crim. App. 1996).[2] Gang membership is considered highly inflammatory character evidence, but it may be relevant to prove bias, motive, intent, or to refute a defensive theory. *See Barrientos v. State*, 539 S.W.3d 482, 492 (Tex. App.— Houston [1st Dist.] 2017, no pet.) (holding gang membership is highly inflammatory) (quoting *Galvez v. State*, 962 S.W.2d 203, 206 (Tex. App.—Austin 1998, pet. ref'd) ("[G]ang membership is highly inflammatory character evidence

---

[2] "We . . . do not now[] hold that evidence of a defendant's gang affiliations is admissible as character evidence during the guilt/innocence phase of a trial." *Pondexter*, 942 S.W.2d at 584 n.2.

likely to cause an individual to be convicted for being a bad person apart from sufficient indicia of guilt regarding this particular crime.")).

In certain circumstances, evidence of gang membership may be relevant. *Barlow v. State*, 175 S.W.3d 839, 843 (Tex. App.—Texarkana 2005, pet. ref'd). Even when relevant, however, it must also be determined whether the probative value of the evidence is outweighed by the danger of unfair prejudice. *Id*. at 844.

As appellant contends, whether such evidence is admissible depends upon the circumstances. In this case, because appellant introduced Cale's gang membership to the jury at the beginning of trial before any evidence had been admitted, there is insufficient evidence on the record to determine whether or not there is a plausible basis for admitting the evidence. *See Pierson*, 426 S.W.3d at 771 (concluding trial court did not abuse its discretion in declaring mistrial where trial counsel hoped more than intended that objectionable question would lead to admissible evidence).

Because it was unclear whether such evidence would be admissible or not, the trial court signed a limine order before trial that required the parties to approach the bench before offering such evidence to the jury.[3] As appellant pointed out to the

---

[3] In *Norman v. State*, the Texas Court of Criminal Appeals addressed motions in limine as follows:

> The purpose of a motion in limine is to prevent *particular matters* from coming before the jury. It is, in practice, a method of raising objection to an area of inquiry prior to the matter reaching the ears of the jury through a posed question, jury argument, or other means. *As such, it is wider in scope than the sustaining of an objection made after the objectionable matter has been expressed. However, it is also, by its nature, subject to reconsideration by the court throughout the course of the trial*. This is because it may not be enforced to exclude properly admissible evidence.

trial court and again argues on appeal, the limine order was narrowly drafted and did not expressly prohibit comments during opening statement informing the jury of Cale's gang membership. Nevertheless, the record shows the trial court and the parties understood the sensitivity of the matter, and that the issue of whether evidence of Cale's gang membership was admissible would be a hotly contested issue at trial. Counsel informed the trial court that she had done extensive research to argue for its admission. Counsel's argument to the trial court that she considered it her duty as a zealous advocate to take advantage of the State's drafting mistake also shows her subjective understanding that the issue of Cale's gang membership was inflammatory and that she was trying to obtain an advantage over the State by mentioning it.

In presenting his defense, an accused must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). The trial court interpreted counsel's comment as violating its limine ruling as reflected by the discussion during the pretrial hearing held one week before trial. By broaching the subject of Cale's gang membership in opening argument, counsel deprived the trial court of the opportunity to determine whether the evidence was admissible as the trial unfolded. The trial court found manifest necessity existed to

---

*Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975). (emphasis added).

merit a mistrial because defense counsel's statement created a circumstance whereby the jury could not disregard potentially inadmissible character evidence—suggesting a situation in which the jury could no longer reach a fair verdict. *See Ex parte Garza*, 337 S.W.3d at 909.

In *Arizona v. Washington*, the United States Supreme Court upheld a trial court's declaration of a mistrial due to improper argument by defense counsel during opening statement. The Supreme Court explained that "compelling institutional considerations" militate in favor of deferring to the trial court's evaluation of the significance of possible juror bias because the trial court has seen and heard the jurors during *voir dire*, is more familiar than the appellate court with the evidence and background of the case, and has had the opportunity to listen to the tone of the argument and observe the apparent reaction of the jurors. *Arizona v. Washington*, 434 U.S. 497, 513–14 (1978). In deciding whether to grant a mistrial, the trial court must temper its decision whether to abort the trial by considering the importance to the defendant of the constitutionally protected interest in concluding the defendant's case in one trial. *Id.* at 514. To ensure the trial court struck the right balance, a reviewing court must satisfy itself that the trial court exercised sound discretion and did not act irrationally or irresponsibly in declaring a mistrial. *Id.*

In approving the trial court's actions, the Supreme Court explained as follows:

Defense counsel aired improper and highly prejudicial evidence before the jury, the possible impact of which the trial judge was in the best position to assess. The trial judge did not act precipitately in response

to the prosecutor's request for a mistrial. On the contrary, evincing a concern for the possible double jeopardy consequences of an erroneous ruling, he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial. We are therefore persuaded by the record that the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding. Since he exercised "sound discretion" in handling the sensitive problem of possible juror bias created by the improper comment of defense counsel, the mistrial order is supported by the "high degree" of necessity which is required in a case of this kind. Neither party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, "the public's interest in fair trials designed to end in just judgements" must prevail over the defendant's "valued right" to have his trial concluded before the first jury impaneled.

*Id*. at 514–16.

The Supreme Court's analysis in *Arizona* fits the circumstances in this case. It is apparent from the record that the trial court intended the "particular matter" of Cale's membership in a motorcycle gang to not be raised until there was some evidentiary foundation laid. *See Norman*, 523 S.W.2d at 671. The trial court, at the time of defense counsel's statement, had neither evidence upon which to base a decision of admissibility nor an opportunity to address the admissibility of the statement's anticipated evidence under its limine ruling. Faced with the prospect that the jury might have been prejudiced by counsel's comment revealing inflammatory and potentially inadmissible information that was the subject of the trial court's limine ruling, the trial court convened a hearing where it allowed both sides to argue whether a mistrial should be declared. When the State had second thoughts about the mistrial, the trial court rescinded its ruling to allow the State time

to research the issue and reflect on the matter. The trial court probed counsel about her grounds for believing the matter might be admissible and asked her for any authority that would show gang membership, standing alone, is admissible. After prompting from the State, the trial court put on the record its reasons for believing why less drastic alternatives, such as instructing the jury not to consider the statement or holding counsel in contempt, would not be sufficient to remedy the inappropriate comment.

Appellant contends the trial court's discussion of the alternatives was cursory and did not occur until after the ruling had been made and the State pointed out the need for discussing alternatives. However, as the record makes clear, the trial court conducted a lengthy hearing considering all aspects of the ruling. The trial court directly stated on the record its reasons for believing less drastic alternatives would not work before it ultimately concluded the mistrial hearing. The record shows to our satisfaction that the trial court exercised sound discretion and did not act irrationally or irresponsibly in declaring a mistrial. *Id*. at 514; *see also Fierro*, 79 S.W.3d at 56–57 (concluding trial court abused its discretion in granting mistrial where record did not reflect any consideration of alternatives); *Ex parte Bruce*, 112 S.W.3d 635, 640–41 (Tex. App.—Fort Worth 2003, pet. dism'd as untimely) (affirming denial of habeas relief where trial court granted mistrial after trial counsel made inflammatory, inadmissible remark during opening statement despite being admonished not to during pretrial hearing and in limine order).

*Placement of the Burden to Show Manifest Necessity*

In the second part of his issue, appellant contends the trial court placed the burden on him to show there was not a manifest necessity for a mistrial rather than properly placing the burden on the State. *See Pierson*, 426 S.W.3d at 770.

As appellant notes in her brief, the trial court stated in its initial ruling that it would grant the State's request for a mistrial, but the State would have to defend the decision. Thus, the record shows the trial court understood which party bore the burden to establish manifest necessity for the mistrial. Appellant contends, however, that after the trial court granted the State a recess and the State returned to press its case for a mistrial, the trial court shifted the burden to appellant to show that there was no manifest necessity for a mistrial rather than making the State prove there was a manifest necessity. We disagree with appellant's assessment of the record.

Counsel took the position that she could inform the jury of Cale's gang membership because doing so did not violate the limine order and the information would be admissible during trial. In his appellate brief, appellant reiterates that he is arguing self-defense and the reasonableness of his fear of the victim, his belief that deadly force was immediately necessary, and his belief that the victim was about to attack him with deadly force "are all issues of consequence to be decided by the jury." Appellant argues that his knowledge of Cale's gang membership and tattoos and Cale's bragging to him about being an enforcer who "took contracts and busted heads" for the Bandidos are relevant and admissible for his self-defense claim.

The trial court questioned counsel about the basis for her position and more specifically, about whether she had legal authority that would render the gang evidence admissible. The trial court never wavered in its view that the evidence was inflammatory and prejudicial. The trial court's discussion with counsel appears aimed at establishing whether there was any authority that would show her comment was a preview of admissible evidence the defense would place before the jury. Nothing in the discussion persuades us the trial court shifted the burden of proof to appellant to show there was not a manifest necessity for a mistrial. We overrule appellant's sole issue on appeal.

*Conclusion*

We conclude the trial court did not abuse its discretion in denying appellant's pretrial application for writ of habeas corpus seeking relief from double jeopardy. Accordingly, we affirm the trial court's order denying relief on appellant's pretrial application for writ of habeas corpus seeking relief from double jeopardy.

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
191389F.U05

–29–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

EX PARTE CARL ALLEN WELCH

No. 05-19-01389-CR

On Appeal from the 196th District
Court, Hunt County, Texas
Trial Court Cause No. 31,927.
Opinion delivered by Chief Justice
Burns. Justices Myers and Pedersen,
III participating.

Based on the Court's opinion of this date, the order of the trial court denying relief on appellant's pretrial application for writ of habeas corpus seeking relief from double jeopardy is **AFFIRMED**.

Judgment entered May 3, 2021